C/m

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
NICHOLAS GALLELLI, an infant by and
through his Parents and Natural Guardians,
MARC GALLELLI and LINDA GALLELLI,
and MARC GALLELLI and LINDA
GALLELLI, Individually,

                               **MEMORANDUM AND ORDER**

          Plaintiffs,

    --against--

                               CV-08-3372
                               (Wexler, J.)

CROWN IMPORTS, LLC, GRUPO MODELO,
S.A. de C.V. aka G MODELO CORPORATION,
BARTON BRANDS, LTD., and BARTON
BEERS, LTD.,

          Defendants.
------------------------------------------------------------X

    LUSTBERG & FERRETTI
    BY: ROBERT M. LUSTBERG, ESQ.
    5 Garrison Road
    Glens Falls, NY 12801
    Attorneys for Plaintiffs

    LAW OFFICES OF ROBERT F. DANZI
    BY: ROBERT F. DANZI, ESQ.
    900 Merchants Concourse, Suite 314
    Westbury, NY 11590
    Attorneys for Plaintiffs

    MORENUS, CONWAY. GOREN & BRANDMAN
    BY: BRIAN S. BRANDMAN, ESQ.
    58 South Service Road Suite 350
    Melville, NY 11747
    Attorneys for Defendant Crown Imports, LLC

    CERUSSI & SPRING
    BY: THOMAS F. CERUSSI, ESQ.
    One North Lexington Avenue
    White Plains, NY 10601-1700
    Attorneys for Defendant Constellation Spirits f/k/a Barton Brands, Ltd. and Barton Beers, Ltd.

1

CRAVATH, SWAINE & MOORE, LLP
BY: GARY A. BORNSTEIN, ESQ.
825 Eighth Avenue
New York, NY 10019-7475
Attorneys for Defendant Grupo Modelo, S.A.B. de C.V.
(named herein as "Grupo Model, A.S. de C.V., aka G. Modelo Corporation")

WEXLER, District Judge:

This is a personal injury action commenced on behalf of Nicholas Gallelli, a infant plaintiff who was allegedly injured when a bottle of Corona Extra beer exploded. Glass from the bottle is alleged to have pierced the infant's eye, causing pain, suffering and permanent disability. In addition to representing their infant son, Plaintiffs Marc and Linda Gallelli sue defendants individually, seeking damages for loss of their son's services. Named as Defendants are Grupo Modelo, S.A.B. de C.V., ("GM SAB"), Crown Imports, LLC ("Crown"), Barton Brands, Ltd, (which is currently known as "Constellation Spirits"), and Barton Beers, Ltd. The court refers herein to the latter two named Defendants collectively the "Barton Defendants."

Presently before the court is the motion of Defendant GM SAB, a Mexican corporation, to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.[1] The motion is opposed by Plaintiffs, and the Barton Defendants who, in the event that the motion is denied, seek to name GM SAB as a cross-defendant. Additionally, Plaintiffs seek to amend their complaint to name as an additional defendant, a Mexican corporation known as Diblo S.A. de C.V. ("Diblo") and a domestic corporation known as GModelo Corporation ("GModelo"). Finally, the Barton Defendants seek leave to commence a third party action against Diblo and GModelo.

---

[1] Defendant GM SAB was named incorrectly herein as "Grupo Modelo, A.S. de C.V., aka G. Modelo Corporation."

2

## BACKGROUND

### I. The Parties and the Allegations of the Complaint

Plaintiffs are individuals residing in Suffolk County, New York. Defendant Crown is alleged to be a Delaware corporation that is party to a joint venture consisting of GM SAB and the Barton Defendants. The complaint alleges that Defendants are engaged in the business of brewing, bottling, and importing beer marketed under the Corona name.

Shortly after this case was commenced, counsel for GM SAB informed Plaintiffs that GM SAB is a Mexican corporation that conducts no business within the United States. Counsel described GM SAB as a holding company, the business of which is limited to the holding of stock of other corporations. It was asserted that Plaintiffs named a party over which this court lacks personal jurisdiction. Counsel thereafter sought leave to move to dismiss. The court ordered that the parties engage in discovery as to the jurisdictional issue before briefing the motion to dismiss. Jurisdictional discovery as to GM SAB is complete, and the motion to dismiss, along with the cross-motions of the Plaintiffs and the Barton Defendants are presently before the court.[2]

## DISCUSSION

### I. Facts Regarding the Business and Corporate Structure of GM SAB and Related Entities

#### A. GM SAB, Diblo, Breweries and Distribution Companies

The parties opposing the motion seek to impose jurisdiction over GM SAB based upon its business activities, as well as its relationship with, and the activities of, certain related corporate entities. Accordingly, the court details below the corporate structure and business activities of GM SAB, as well as those of related corporate entities, and the nature of their relationships with GM SAB. These facts are drawn from the documentary discovery, and the deposition of GM SAB, by Jose Pares

---

[2] Personal jurisdiction over Crown and the Brown Defendants is not at issue. Instead, the jurisdictional issue before the court is raised only with respect to Defendant GM SAB.

3

Gutierrez ("Gutierrez"). While Gutierrez is employed as the President of Sales and Marketing of Diblo, he was offered as a person with knowledge of the facts at issue regarding GM SAB.

All parties are in agreement that GM SAB is a Mexican corporation, with its principal place of business in that country. As stated in the annual report of GM SAB and its subsidiaries (the "Annual Report"), GM SAB and its subsidiaries are "mainly engaged" in the production and sale of beer. The businesses connected to GM SAB, via direct and indirect stock ownership, are engaged in all aspects of the beer brewing and distribution businesses. Among the brands of beer brewed and distributed by these entities is beer brewed in Mexico, and marketed under the Corona name.

Discovery before the court reveals that GM SAB is, as described by its counsel, a Mexican holding company. As a holding company, its business is best described as the holding of stock in other companies. It is therefore not directly engaged in any aspect of the beer brewing or distribution businesses. The main asset held by GM SAB is a 76.75% interest in Diblo.[3] The remaining ownership interest in Diblo is owned by Anheuser-Busch In Bev N.V./S.A. ("Anheuser-Busch"). The Annual Report acknowledges this major holding, stating that GM SAB "is mainly holding" 76.75% of the common stock of Diblo.

The business purpose of Diblo, as stated in the Annual Report is "to share investment of subsidiaries, mainly involved in the production, distribution and sale of beer in Mexico and abroad." Thus Diblo, like GM SAB, is a Mexican company that holds the stock of other companies. The Annual Report lists the "most important" subsidiaries of Diblo, based on stockholder equity. Among those subsidiaries are breweries, including Compania Serveicia de Zacatecas, S.A. de C. V., ("Zacatecas"), the brewer of the beer at issue here. Three Diblo subsidiaries are engaged in the

---

[3] The only other assets of GM SAB are stocks and short term assets used in connection with GM SAB's treasury functions and, as described below, less than 1% equity interest in certain of Diblo's Mexican subsidiaries.

4

business of transforming barley to malt, one is involved in machinery manufacture, one is in the business of manufacturing beer cans and crown tops, and eighteen companies are in the business of distributing beer and other products. Two companies are referred to as distributors of beer and other products abroad. Among these two entities is GModelo, an American holding company incorporated in Delaware, the business of which is described below.

Also before the court are pages from the GM SAB website. That website includes a description of the company's corporate structure that is consistent with the structure described in the Annual Report. An organizational chart lists GM SAB at the top of the corporate chain, with a direct link to Diblo. Under Diblo, the corporate organizational chart lists ten types of companies, including seven Mexican breweries, ten international companies, and thirty-two companies involved in distribution. The only direct line in the organization chart flowing from GM SAB is that line depicting its majority ownership interest in Diblo. There is no direct connection depicted between GM SAB and any of the companies linked with Diblo.

Gutierrez testified regarding the corporate relationship among GM SAB, Diblo and the companies involved in the actual brewing and distribution businesses. He confirmed that GM SAB owns 76.75% of Diblo, with the remainder being owned by Anheuser-Busch. Diblo owns 99.999% of each of the companies involved in the brewing and distribution business, including Zacatecas, the brewer of the Corona beer at issue here. The remaining .0001% of the companies involved in the brewing and distribution business, including Zacatecas, is owned by GM SAB.

II. <u>Distribution of Beer into the United States:
Joint Venture Between Diblo and Barton Beers to Form Crown Imports, LLC</u>

The beer at issue did not enter the United States by way of a shipment directly from the Zacatecas brewery. Instead, the United States distributor of beer marketed under the Corona name is Defendant Crown. Crown became the exclusive United States distributor of beer brewed in Mexico by

Diblo subsidiaries by virtue of a July 17, 2006, joint venture agreement between Diblo and Barton Beers, Ltd. (The "Joint Venture"). The Joint Venture resulted in the formation of Crown, a Delaware Limited Liability Company. Crown was formed to be the entity that imports, markets and sells beer brewed in Mexico by Diblo subsidiaries, throughout the United States. In the State of New York, Corona beer is distributed to retailers by way of a company known as Manhattan Beer Distributors, LLC ("Manhattan"). Manhattan is the exclusive wholesaler of Corona beer within certain counties in the State of New York, including Suffolk County.

The Joint Venture agreement refers to the parties thereto as Diblo and Barton Beers. That document also refers to an entity known as the "Modelo Party" which is defined as a Diblo subsidiary responsible for contributing cash to the company contemplated to be formed as a result of the Joint Venture. Other corporate documents make clear that the Modelo Party is GModelo. Thus, while Diblo is a party to the joint venture agreement, it contributed no cash to the venture. Instead, the cash contribution made to the Joint Venture on behalf of Diblo was made by GModelo.

Diblo owns 100% of GModelo, which is a holding company incorporated in Delaware, with its principal place of business in that state. Thus, while Diblo owns all of GModelo, there is no direct ownership interest between GM SAB, and GModelo. Instead, GM SAB owns only an indirect interest in GModelo, by virtue of its 76.75% ownership interest in Diblo.

While the actual corporate documents evidencing the Joint Venture make clear that the parties to the venture are Diblo and Barton Beers, Ltd., press releases issued by the parties to the Joint Venture refer to the venture as an agreement between GM SAB and Constellation. The GM SAB press release states that the Joint Venture was created for the purpose of "importing and marketing Modelo's Mexican beer portfolio in the United States and Guam for a ten year period, beginning in January of 2007." When referring to the business of GM SAB, the press release announcing the Joint Venture refers to GM SAB as "the leader in the production and marketing of beer in Mexico." It is

further stated that GM SAB "currently brews and distributes 12 brands," and that "the company exports five brands with a presence in more than 150 countries."

The Annual Report refers to the Joint Venture agreement, stating that the "new alliance, based in Chicago, is called Crown Imports . . . ." It is further stated that the Joint Venture was developed "in order for Grupo Modelo to have only one importer for the entire United States." While the corporate documents provide that the board of directors for the new company created as a result of the Joint Venture shall be appointed by Barton and the Modelo Party (GModelo), the GM SAB press release states that one half of the board of directors of the joint venture-created company will be comprised of GM SAB directors, and one half will be made up of Constellation directors.

The Annual Report lists forty-five directors. Approximately one half of the directors on that list are referred to as either "related," "proprietary," and/or "independent." Gutierrez, a Vice President at Diblo, also sits on the board of directors of Crown and of GModelo. Also sitting on the board of directors of GModelo is Margarita Hughes ("Hughes"). Hughes serves as the Secretary on the Board of Directors of GM SAB.

As the foregoing discussion makes clear, the formal Joint Venture corporate document, and the informal press releases vary in their references to GM SAB, Diblo or GModelo as one party, and Barton Beers or Constellation as the other party to the agreement. It is clear, however, that among the GM SAB/Diblo/GModelo directors on the board of the Joint Venture is Carlos Fernandez, the chairman and chief executive officer of GM SAB.

The beer at issue was not distributed immediately following brewing, by Crown, but made its way into the United States by virtue of a distribution arrangement involving Zacatecas and a Mexican distribution company known as Extrade II, S.A. de C.V. ("Extrade"). Extrade is party to a distribution agreement with Crown, which as described above, derives the right to distribute Corona beer in the United States as a result of the Joint Venture agreement between Diblo and Barton Beers.

Against this corporate background, and description of the chain of distribution, the court turns to discuss relevant legal principles and the merits of the pending jurisdictional motion.

III. Prior Proceedings and the Standard of Review

The parties have engaged in extensive documentary discovery, and Plaintiffs have deposed GM SAB, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. In view of the fact that Plaintiffs have had the benefit of complete jurisdictional discovery, they must make more than a prima facie showing of jurisdiction based only upon the unsupported allegations of the pleadings. Instead, Plaintiffs' prima facie showing of jurisdiction must be supported by facts that, if credited, would establish personal jurisdiction. Ball v. Metallurgie Hoboken-Overpelt, 902 F.2d 194, 197 (2d Cir. 1990); J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp.2d 544, 547 (S.D.N.Y. 2001). Conclusory allegations based only on information and belief are not sufficient. Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998).

IV. Personal Jurisdiction: Legal Principles

A district court may exercise jurisdiction over a defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(A); Jazini, 148 F.3d at 183-84; Arrowsmith v. U.P.I., 320 F.2d 219, 223 (2d Cir. 1963). If, but only if, jurisdiction is proper under state law, must the court address the issue of whether the exercise of jurisdiction comports with Fourteenth Amendment Constitutional standards of Due Process. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).

A. Personal Jurisdiction Under New York Law

Plaintiff alleges personal jurisdiction over GM SAB pursuant to sections 301 and/or 302(a)(3)(ii) of the New York Civil Practice Law and Rules ("CPLR").

8

i. <u>Section 301</u>

A foreign corporation is amenable to jurisdiction under CPLR section 301 if it is "doing business" in New York State. A foreign corporation is "doing business" if it engages in "such a continuous and systematic course of doing business" sufficient to support a finding of its presence in New York. <u>Laufer v. Ostrow</u>, 449 N.Y.S.2d 456, 458 (1982) (citations omitted); e.g., <u>Frummer v. Hilton Hotels International, Inc.</u>, 281 N.Y.S.2d 41, 43 (1967). A corporation is "present in New York . . . if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 58, (2d. Cir 1985), quoting <u>Tauza v. Susquehanna Coal Co.</u>, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917).

Factors tending to show a jurisdictional presence in New York, include the existence of a New York office, the presence of bank accounts in New York, ownership of property in New York, and the presence of agents or of employees in New York. <u>Landoil Resources Corp. v. Alexander & Alexander Services, Inc.</u>, 918 F.2d 1039, 1043 (2d Cir. 1990); <u>see also</u> <u>Hoffritz</u>, 763 F.2d at 58. Solicitation of business alone is insufficient to find a corporate presence in this state. <u>Landoil</u>, 918 F.2d at 1043.

A foreign supplier of goods to an independent agency that solicits orders from New York purchasers is not necessarily "present" in this jurisdiction. <u>Laufer</u>, 449 N.Y.S.2d at 459; <u>see, e.g.</u>, <u>Delagi v. Volkswagenwerk AG of Wolfsburg Germany</u>, 328 N.Y.S.2d 653, 657 (1972). Instead, where the solicitation of business is asserted in support of a "doing business" allegation, the foreign corporation's activities must rise to the level of solicitation plus "some additional activities . . . sufficient to render the corporation amenable to suit." <u>E.g.</u>, <u>Miller v. Surf Properties, Inc.</u>, 176 N.Y.S.2d 318, 321 (1958), quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 314 (1945); <u>see</u> <u>Doe v. Abercrombie & Kent, Inc.</u>, 2010 WL 286640 *3 (S.D.N.Y. 2010). This "solicitation-plus" standard is not satisfied merely through sales of a manufacturer's product in New York. <u>Delagi</u>, 29 N.Y.2d at 433 ("[M]ere sales of a manufacturer's product, however substantial, have never made the

9

foreign corporation amenable to suit in this jurisdiction"). To support the exercise of jurisdiction, the defendant corporation must solicit business in New York in a manner that is "substantial and continuous" and must engage in other activities of substance in the state. Medpay Systems, Inc. v. Medpay USA, LLC, 2007 WL 1100796 at *6 (E.D.N.Y. 2007); see also Landoil, 918 F.2d at 1043-44.

1. Establishing CPLR 301 Jurisdiction Through the Acts of a Related Corporate Entity

Where the activities of the named Defendant cannot be deemed to have be conducted directly within the State of New York, CPLR 301 jurisdiction may be established by attributing the acts of related entities to the named Defendant. Specifically, the related entity may be deemed either a "mere department," of the named Defendant, or its agent. H. Heller & Co., Inc. v. Novacorchems., Ltd., 726 F. Supp. 49, 54 (S.D.N.Y. 1988).

(a) The "Mere Department" Theory Jurisdiction

A subsidiary will be considered a "mere department" of the named defendant where the defendant's control over the subsidiary is "pervasive enough that the corporate separation is more formal than real." Id. See Linde v. Arab Bank, PLC, 262 F.R.D. 136, 142 (E.D.N.Y. 2009). Common ownership of the defendant over which jurisdiction is sought to be asserted, and the alleged "department," is an essential factor for a finding of jurisdiction over the parent. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp, 751 F.2d 117, 120 (2d Cir. 1984). Stock ownership of the subsidiary, standing alone, is not enough to prove that the subsidiary is a department of the parent. Id. Instead, the court must consider: (1) the financial dependency of the subsidiary on the parent; (2) the parent company's interference in the assignment of the subsidiary's key personnel; (3) the observance of corporate formalities and (4) control by the parent of the day-to-day operation of the subsidiary. Id. at 120-22; Ocwen, 131 F. Supp.2d at 549. While, as noted, common ownership between the parent and its alleged department is essential to a finding that the subsidiary is a mere department of its parent, the remaining factors must thereafter be considered to determine the outcome of the inquiry.

Ginsberg v. Government Properties Trust, Inc., 2007 WL 2981683 *8 (S.D.N.Y. 2007); see Volkswagenwerk, 751 F.2d at 120.

(b)     The Agency Theory of Jurisdiction

Jurisdiction based upon an agency theory requires the plaintiff to show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." Jazini, 148 F.3d at 184 (quoting Frummer, 281 N.Y.S.2d at 44). The agent's activities in New York must be important enough to the foreign corporation that in the absence of an agent, the named defendant would "undertake to perform substantially similar services." Stutts v. De Dietrich Group, 465 F.Supp.2d 156, 162 (E.D.N.Y.2006) (internal quotations and citations omitted). A foreign manufacturer of a product is not deemed to be present in New York, for purposes of CPLR 301, simply because the product is distributed through a New York distributor. Jazini, 148 F.3d at 184. The mere sale of the product is not considered the act of doing "all the business which [the parent corporation] could do were it here by its own officials." Id., quoting, Frummer, 281 N.Y.S.2d at 44.

Alternatively, when considering the agency issue, the court considers whether the subsidiary is carrying out its own business, or the business of the parent. Ginsberg, 2007 WL 2981683 *7. Where the defendant over which jurisdiction is sought to be exercised is a holding company, the business of that company is the business of investment. Where a subsidiary is engaged in a completely different line of business, it cannot be said that the business of the parent is carried out by the subsidiary. See Ocwen, 131 F. Supp.2d at 549. Thus, the subsidiary of a holding company carries on its business as an investment of the holding company, and not as an agent of the holding company. Gurvey v. Cowan, Liebowitz & Latman, P.C., 2009 WL 691056 *4 (S.D.N.Y. 2009); see also Ginsberg, 2007 WL 2981683 *7.

11

ii. Section 302(a)(3)

CPLR Section 302(a)(3) provides for long arm jurisdiction over a nondomicilliary defendant who, "in person or through an agent," commits a tortious act outside of New York that causes injury within the State. In addition, the defendant's activities must meet one of the two sets of statutory criteria set forth in subsections (i) or (ii) of Section 302(a)(3). Plaintiffs here rely on subsection (ii). As to that subsection, jurisdiction is proper, if, in addition to commission of the tortious act outside of New York with in-state consequence, the defendant: (1) expects or should reasonably expect his acts to have New York consequences and (2) derives "substantial revenue" from interstate or international commerce. N.Y.C.P.L.R. §302(a)(3)(i)(ii); see LaMarca v. Pak-Mor Manufacturing Co., 713 N.Y.S.2d 304, 307 (2000); see also Overseas Media, Inc. v. Skvortsov, 407 F.Supp. 2d 563, 574-75 (S.D.N.Y. 2006).

V. Disposition of the Motion to Dismiss

A. Section 301

It is worth reiterating that GM SAB is a Mexican corporation. It has no offices, employees, or telephone listings within the State of New York, or indeed, anywhere in the United States. Instead, GM SAB's only offices are located in Mexico City, Mexico. Plaintiffs have come forward with no evidence to contradict these facts. Under these circumstances, the court cannot conclude that GM SAB engages in "a continuous and systematic course of doing business" sufficient to support a finding of its presence in this jurisdiction. Accordingly, the court holds that GM SAB is not, by itself, doing business within the meaning of Section 301 of the CPLR.

Since GM SAB has no presence within the State of New York, the court turns to consider whether Plaintiffs have come forward with facts sufficient to support a finding that CPLR Section 301 presence can be established pursuant to either the "mere department" or "agency" theories of jurisdiction. Plaintiffs are somewhat vague in terms of the particular corporate entity over which GM

SAB is alleged to exercise control. It appears, however, that Plaintiffs assert such control, and the blurring of corporate existence, with respect to all companies in the so-called "Grupo Mondelo Family," that are engaged in all aspects of the beer brewing and distribution businesses. This includes Diblo as well as all companies in which Diblo has an interest, including Zacatecas, Crown, and all other corporate entities referred to above.

i. Jurisdiction Cannot Be Premised on a Mere Department Theory

To support a "mere department" theory of jurisdiction, the facts would have to support a finding that GM SAB exercises "pervasive control," over all aspects of the beer brewing and distribution businesses. This requires a showing of common ownership along with some measure of the factors of financial dependency, interference in the assignment of key personnel and control of the day to day operation of the subsidiary. Ocwen, 131 F. Supp.2d at 549. As to an agency theory, Plaintiffs must come forward with facts showing that these agents did the business that GM SAB would necessarily be required to do if were present in this State. See Jazini, 148 F.3d at 184.

Plaintiffs have shown nothing more than the fact that GM SAB is, as it has asserted, a holding company whose major asset is the stock of Diblo. While there may be some overlapping executive personnel among certain of the corporate entities identified, there is no showing of the common ownership that is a "necessary prerequisite" to a mere department finding. See Linde, 262 F.R.D. at 143. Even if there were common ownership, the absence of any other factor precludes a holding of jurisdiction over GM SAB on a mere department theory.

No subsidiary is financially dependent upon GM SAB. Courts considering this factor have held that a finding of financial dependency requires a showing that the subsidiary would be unable to function without the financial support of the parent. See Reers v. Deutsche Bahn AG, 320 F. Supp.2d 140, 157 (S.D.N.Y. 2004). Here, to the contrary, if there is any financial dependence, it is that of GM SAB on Diblo and its subsidiaries, which entities are the investments of GM SAB. Nor is there any

showing that GM SAB takes an active role in choosing operational personnel. The fact that certain directors overlap is of little consequence, where as here, "common directors and officers is a normal business practice of a multinational corporation and absent complete control [there] is no justification to labeling a subsidiary a mere department of the parent." Linde, 262 F.R.D. at 143, quoting, in re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp.2d 403, 412 (S.D.N.Y. 2002).

References in the Annual Report, informal press releases, and on the internet to the "Grupo Modelo Family," do not change this conclusion. Even the Annual Report, so heavily relied upon by Plaintiffs, does not refer to GM SAB alone when describing its business, but to GM SAB "and its subsidiaries." Statements of global cooperation among a parent and its subsidiaries do not support a finding of the pervasive control necessary to support a mere department holding. Jazini, 148 F.3d at 185. Moreover, the references upon which Plaintiffs rely are commonplace in advertising and internet materials, and do not trump the reality of documents evidencing adherence to corporate formalities. Reers, 320 F. Supp.2d at 157-58 ("advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities"), quoting, Ocwen, 131 F. Supp.2d at 550; see also Linde, 262 F.R.D. at 144-45; Stutts, 465 F. Supp.2d at 164. Despite informal references, it is clear that GM SAB scrupulously adheres to corporate formalities in its dealings with Diblo and other subsidiaries. For the foregoing reasons, the court concludes that CPLR 301 jurisdiction cannot be premised on a mere department theory.

ii. Jurisdiction Cannot Be Premised on an Agency Theory

For similar reasons, the court declines to find that CPLR 301 jurisdiction can be premised on an agency theory. Such a holding would require Plaintiffs to come forward with facts showing that the GM SAB subsidiary relied upon "does all the business which [the parent corporation] could do were it here by its own officials." Jazini, 148 F.3d at 184 (quoting Frummer, 281 N.Y.S.2d at 41). As noted,

14

the business of GM SAB is that of a holding company that manages its investments. The entities engaged in beer brewing and distribution are owned as subsidiaries of Diblo, with a tiny fraction owned by GM SAB. The businesses of these subsidiaries are beer brewing and distribution. The business of GM SAB is that of a holding company, the business of which is "nothing more that an investment mechanism [–] a device for diversifying risk through corporate acquisitions . . . ." Gurvey, 2009 WL 691056 *4. Since the subsidiaries carry out their own businesses, and not the investment business of GM SAB, the subsidiaries cannot be deemed the agents of GM SAB, and CPLR 301 jurisdiction cannot be premised on an agency theory.

B.   Section 302(a)(3)

As discussed, CPLR Section 302(a)(3) provides for the exercise of jurisdiction over a foreign defendant where that defendant, either personally, or through an agent, has committed a tortious act outside of New York that causes injury within the state. CPLR 302(a)(3). Here, Plaintiffs claim that the tortious act was the manufacture of a defective bottle in Mexico. Thus, to sustain jurisdiction, Plaintiff must come forward with facts showing an agency relationship between GM SAB and the bottle manufacturer. The court assumes that the bottle manufacturer is either Zacatecas or a different subsidiary that, like Zacatecas, is 99.999% owned by Diblo, with the remainder owned by GM SAB.

Plaintiffs have failed to come forward with facts showing an agency relationship between GM SAB and the bottle manufacturer sufficient to sustain jurisdiction pursuant to CPLR 301(a)(3). Again, the court relies on the fact that GM SAB is a holding company that is not involved in the beer business, but in the business of investment. The mere fact that GM SAB is a minority shareholder in aspects of the beer business, including, for the sake of argument, the business of bottle manufacture, is not enough to establish the control necessary to show an agency relationship. In the absence of such a relationship, it cannot be said that GM SAB has, either in person, or through an agent, committed the tortious act necessary to sustain jurisdiction pursuant to CPLR 302(a)(3).

15

## VI. The Motion to Dismiss is Granted

For the foregoing reasons, the court holds that Plaintiffs have not come forward with facts sufficient to support a finding of personal jurisdiction over GM SAB. Instead, the court holds that the facts establish clearly that GM SAB is a holding company managing investments of companies that are independently involved in the beer brewing and distribution businesses. GM SAB has the right to conduct its business as a holding company in order to diversify its risk. The use of the corporate form to accomplish this goal is completely legitimate, and Plaintiffs have come forward with no facts requiring the court to ignore this way of doing business. See Sarhank v. Oracle Corp., 404 F.3d 657, 662 (2d Cir. 2005) (noting that the "practice of dealing through a subsidiary is entirely appropriate and essential to our nation's conduct of foreign trade").

## VII. Motions to Amend

In response to the motion of GM SAB to dismiss, Plaintiffs have sought leave to amend their complaint to name Diblo and GModelo as Defendants.[4] The Barton Defendants seek to amend their answer to assert claims against these entities as well. The court grants leave to amend to add these parties. Amended pleadings must be served within thirty days of the date of this order. The court expresses no opinion at this time as to whether personal jurisdiction over these parties is appropriate. In view of the extensive discovery that has taken place, the amended pleadings should be clear in their allegations regarding the assertion of personal jurisdiction over these additional parties. Leave to amend is without prejudice to the newly named parties' rights to move to dismiss.

---

[4] Plaintiffs' papers refer to Diblo (as defined herein) and to a company known as "Diblo Corporativo." This latter company is a subsidiary of Diblo. The court reads Plaintiffs' papers as seeking to name Diblo, the holding company that owns the majority of shares in its subsidiaries, as a defendant herein, and not Diblo Corporativo.

## CONCLUSION

For the foregoing reasons, the motion of Defendant GM SAB to dismiss for lack of jurisdiction is granted. Amended pleadings may be filed as set forth above. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
 March 20 2010