UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NICHOLAS GALLELLI, an infant by and through
his Parents and Natural Guardians, MARC
GALLELLI and LINDA GALLELLI, and MARC
GALLELLI and LINDA GALLELLI, Individually,

                         Plaintiffs,

    -against-

CROWN IMPORTS, LLC, GRUPO MODELO, S.A.
de C.V., aka G MODELO CORPORATION, BARTON
BRANDS, LTD., and BARTON BEERS, LTD.,

                         Defendants.
-----------------------------------------------------------------X
CROWN IMPORTS, LLC,

                Third-Party Plaintiffs,

    -against-

EXTRADE II, S.A. DE C.V.,

                Third-Party Defendant
-----------------------------------------------------------------X

Docket No. 08 CV 3372
(LDW) (ARL)

        ECF

**THIRD-PARTY
COMPLAINT**

Defendant, CROWN IMPORTS, LLC, by their attorneys MORENUS, CONWAY, GOREN & BRANDMAN, complains of the third-party defendant(s) by alleging the following:

### AS TO THE PARTIES

1.    That at all times hereinafter mentioned, the defendant/third-party plaintiff, CROWN IMPORTS, LLC., was and still is a limited liability company authorized and existing under the laws of the State of Delaware and has a principal place of business in the City of Chicago, State of Illinois.

2.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II S.A. DE C.V. (hereinafter referred to as "EXTRADE II") was and is a sociedad anónima de capital variable organized under the laws of the Country of Mexico located at Lago Alberto No. 156, Col. Anahuac, 11320 Mexico D.F.

3.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was and/or still is the supplier of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States.

4.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was and/or still is the supplier of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New Jersey.

5.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was and/or still is the supplier of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New York.

6.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was the exporter of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States.

7.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was the exporter of Modelo beer products, including Corona Extra

beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New Jersey.

8.      That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, was the exporter of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New York.

9.      That at all times hereinafter mentioned, the third-party defendant EXTRADE II, conducted and/or still conducts business in the United States and derives substantial revenue therefrom.

10.    That at all times hereinafter mentioned, the third-party defendant EXTRADE II, conducted and/or still conducts business in the United States, and specifically, in the State of New Jersey, and derives substantial revenue therefrom.

11.    That at all times hereinafter mentioned, the third-party defendant EXTRADE II, conducted and/or still conducts business in the United States, and specifically, in the State of New York, and derives substantial revenue therefrom.

12.    That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does solicits business in the United States.

13.    That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does solicits business in the United States, and specifically, in the State of New Jersey.

14.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does solicits business in the United States, and specifically, in the State of New York.

15.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States.

16.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New Jersey.

17.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New York.

18.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States.

19.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New Jersey.

20.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, did and/or still does derive substantial revenue from its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, and specifically, in the State of New York.

21.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, subjects it to consequences within the United States.

22.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, subjects it to consequences within the United States, and specifically, in the State of New Jersey.

23.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its supplying of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in

the United States, subjects it to consequences within the United States, and specifically, in the State of New York.

24.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, subjects it to consequences within the United States.

25.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, subjects it to consequences within the United States, and specifically, in the State of New Jersey.

26.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II's conduct in its exportation of Modelo beer products, including Corona Extra beer, from the Country of Mexico to be imported and/or sold in the United States, subjects it to consequences within the United States, and specifically, in the State of New York.

27.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, committed tortious acts within the Country of Mexico which brought about injury and/or consequences in the United States.

28.   That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, committed tortious acts within the Country of Mexico which brought about injury and/or consequences in the United States, and specifically, in the State of New Jersey.

29.     That at all times hereinafter mentioned, the third-party defendant, EXTRADE II, committed tortious acts within the Country of Mexico which brought about injury and/or consequences in the United States, and specifically, in the State of New York.

## AS TO THE PROCEDURAL HISTORY, JURISDICTION AND NATURE OF THE ACTION

30.     That the plaintiffs, NICHOLAS GALLELLI, an infant, by and through his Parents and Natural Guardians, MARC GALLELLI and LINDA GALLELLI, and MARC GALLELLI and LINDA GALLELLI, Individually (hereinafter referred to as the "plaintiffs"), commenced the underlying main action in this Court by service of a Complaint and Demand for Jury Trial on or about August 14, 2008.  The Complaint contains causes of action sounding in negligence, *res ipsa loquitur,* strict product liability (defective manufacture of the subject Corona Extra beer bottle) and breach of warranty.  A copy of said Complaint is annexed hereto as Exhibit "A."

31.     That on or about September 17, 2008, the defendants/third-party plaintiffs filed an Answer to Complaint and denied all material allegations relating to the causes of action alleged and contained within the plaintiffs' Complaint.  A copy of defendant/third-party plaintiffs' Answer to the Complaint is annexed hereto as Exhibit "B."

32.     That this Court has jurisdiction over this third-party action under 28 U.S.C. §1367, Rule 14 of the Federal Rules of Civil Procedure and Article XII of the Importer Agreement, dated January 2, 2007 between EXTRADE II and defendant, CROWN IMPORTS, LLC, as the third-party claims against

EXTRADE II are so related to the claims in the underlying main action as they form part of the same basis, case or controversy under Article III of the United States Constitution, and this Court has granted permission and leave to the defendants/third-party plaintiffs to assert such third-party claims against EXTRADE II by Order of the Hon. Leonard D. Wexler.

33. That this third-party action arises out of transactions and/or occurrences within the United States, and specifically, the State of New Jersey and/or the State of New York.

34. In their complaint, plaintiffs allege that on July 4, 2007, the infant plaintiff, NICHOLAS GALLELLI, sustained serious personal injuries when a glass bottle of Corona Extra beer (hereinafter referred as to the "Bottle") allegedly brewed, bottled, manufactured, imported, marketed, distributed and sold by the defendants/third-party plaintiffs exploded sending broken glass into the infant plaintiff's left eye. *See*, Exhibit A at ¶¶ 17-19.

## AS TO THE IMPORTER AGREEMENT
## BETWEEN EXTRADE II AND CROWN IMPORTS, LLC

35. That prior to July 4, 2007, and specifically, on or about January 2, 2007, third-party defendant, EXTRADE II, entered into a written Importer Agreement (hereinafter referred as to the "Agreement") with defendant, CROWN IMPORTS, LLC ((hereinafter referred as "CROWN") wherein EXTRADE II agreed to supply and/or export to CROWN, the exclusive right to sell Modelo beer products, including Corona Extra beer, within the fifty (50) states of the United States.

36.   That prior to July 4, 2007, and specifically, on or about January 2, 2007, third-party defendant, EXTRADE II, entered into a written Importer Agreement (hereinafter referred as to the "Agreement") with defendant, CROWN IMPORTS, LLC ((hereinafter referred as "CROWN") wherein EXTRADE II agreed to supply and/or export to CROWN, the exclusive right to sell Modelo beer products, including Corona Extra beer, within the fifty (50) states of the United States, and specifically, within the State of New Jersey.

37.   That prior to July 4, 2007, and specifically, on or about January 2, 2007, third-party defendant, EXTRADE II, entered into a written Importer Agreement (hereinafter referred as to the "Agreement") with defendant, CROWN IMPORTS, LLC ((hereinafter referred as "CROWN") wherein EXTRADE II agreed to supply and/or export to CROWN, the exclusive right to sell Modelo beer products, including Corona Extra beer, within the fifty (50) states of the United States, and specifically, within the State of New York.

38.   That the Agreement between EXTRADE II and CROWN was in effect on the date of the infant plaintiff, NICHOLAS GALLELLI's accident of July 4, 2007.

39.   That pursuant to the terms, conditions and provisions contained within the aforesaid Agreement, EXTRADE II agreed, among other things, to indemnify and hold harmless Crown from and against, any and all claims, losses, liabilities, costs and expenses (including reasonable fees and disbursements of attorneys) arising out of any actual or alleged defect in the manufacture of the Modelo beer products, including Corona Extra beer,

supplied by EXTRADE II, including but not limited to those based on or resulting from damages actually or allegedly caused to persons or the property of third-parties by reason of any such failure or defect.

40.     That the subject Bottle (bearing markings "GJ27CO88 17:57") which plaintiffs claim allegedly exploded and injured the infant plaintiff, NICHOLAS GALLELLI, on July 4, 2007 was a product which was supplied and/or exported by EXTRADE II to CROWN pursuant to the terms, conditions and provisions contained within the aforesaid Agreement.

41.     That the claims asserted by the plaintiffs against in the underlying main action fall within the purview of the terms, conditions and provisions contained within the aforesaid Agreement between EXTRADE II and CROWN and during the time period in which the defendant, BARTON BEERS, LTD., provided licensing to defendant, CROWN, for CROWN's sale and/or distribution of the subject Bottle.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THIRD-PARTY DEFENDANT, EXTRADE II

42.     That the defendants/third-party plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "41" of the third-party complaint with the same force and effect as if fully set forth herein.

43.     That if the plaintiffs sustained injuries and/or damages in the manner and at the time and place set forth in the Complaint, and if it is found that the defendants/third-party plaintiffs are liable to plaintiffs, then said injuries and/or damages were sustained as a result of third-party defendant,

EXTRADE II's supply and/or exportation of the subject Corona Extra beer and the subject Bottle's actual and/or alleged failure and/or defect.

44.     By reason of the foregoing, the defendants/third-party plaintiffs are entitled to common law indemnification from the third-party defendant, EXTRADE II, for any verdict and/or judgment that the plaintiffs may recover against the defendants/third-party plaintiffs, together with the costs, disbursements and attorneys fees incurred in the defense of the third-party action.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THIRD-PARTY DEFENDANT, EXTRADE II

45.     That the defendants/third-party plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "44" of the third-party complaint with the same force and effect as if fully set forth herein.

46.     That if the plaintiffs sustained injuries and/or damages in the manner and at the time and place set forth in the Complaint, and if it is found that the defendants/third-party plaintiffs are liable to plaintiffs, then said injuries and/or damages were sustained as a result of third-party defendant, EXTRADE II's supply and/or exportation of the subject Corona Extra beer and the subject Bottle's actual and/or alleged failure and/or defect.

47.     That by reason of the foregoing, the defendants/third-party plaintiffs are entitled to common law contribution from the third-party defendant, EXTRADE II, as to any verdict and/or judgment that the plaintiffs

may recover against the defendants/third-party plaintiffs equal to the proportionate share of any responsibility as is adjudged between the defendants, the defendants/third-party plaintiffs and the third-party defendant, EXTRADE II, herein.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, EXTRADE II

48.     That the defendants/third-party plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "47" of the third-party complaint with the same force and effect as if fully set forth herein.

49.     That there exists between the third-party plaintiff and third-party defendant a contractual agreement whereby third-party defendant is responsible for and agrees to defend and hold harmless the third-party plaintiffs for injury and death of any person caused by or arising out of the performance of the third party defendant, its agents or employees. A copy of which is annexed as Exhibit "C".

50.     That the aforementioned contractual clause of indemnification reads as follows:

## ARTICLE X
## INDEMNIFICATION AND INSURANCE

**10.1 Extrade II agrees to indemnify and hold harmless Importer from and against, any and all claims, losses, liabilities costs and expenses (including reasonable fees and disbursements of attorneys) arising out of any failure to label and mark Containers supplied by Extrade II in conformity with law, or out of any actual or alleged defect in the manufacture**

**of Product or Containers supplied by Extrade II, including but not limited to those based on or resulting from damages actually or alleged caused to persons or the property of third parties by reason of any such failure or defect.**

51. That if the plaintiff was injured in any manner other than by his own negligence, such injuries and damages were caused by the negligence, carelessness, breach of contract, breach of warranty, of the third-party defendant.

52. That the third-party defendant has a contractual obligation to hold the third-party plaintiff harmless for the injury alleged herein.

53. That if the plaintiff recovers judgment against the third-party plaintiff for injuries as alleged in the plaintiff's complaint, the third-party plaintiff would have been cast into damages by operation of law and thereby harmed due to a breach of contract by third-party defendant to hold the third-party plaintiff harmless and the third-party plaintiff is entitled to full and complete indemnification over and against the third-party defendant.

**WHEREFORE**, the defendants/third-party plaintiffs, CROWN IMPORTS, LLC, hereby demand judgment dismissing the plaintiffs' complaint, or, in the event that the plaintiffs recover a verdict and/or judgment against the defendants/third-party plaintiffs, then the defendants/third-party plaintiffs hereby demand judgment over and against the third-party defendant, EXTRADE II, S.A. DE C.V., as delineated above for all or part of any verdict and/or judgment which may be obtained herein, together with costs, disbursements, attorneys' fees and interest incurred in the third-party action herein.

DATED: Melville, New York
         April 19, 2010

YOURS, etc.

_____
Brian S. Brandman (2193)
MORENUS, CONWAY,
GOREN & BRANDMAN
Attorneys for Defendants
CROWN IMPORTS, LLC
58 South Service Road
Suite 350
Melville, New York 11747
(631) 845-2600
FAX: (631) 845-2626


TO:    Extrade II S.A. de C.V.
       Third-Party Defendant
       Largo Alberto No. 156
       Col. Anahuac
       11320 Mexico, D.F.
       c/o CRAVATH, SWAINE & MOORE, LLP
       World Plaza
       825 Eighth Avenue
       New York, New York 10019-7475
       Tel. No. (212) 474-1000

**COURTESY COPY TO:**

TO:    Robert F. Danzi, Esq.
       LAW OFFICE OF
       ROBERT F. DANZI
       Attorneys for Plaintiffs
       Bar Roll #RD 5447
       900 Merchants Concourse
       Suite 214
       Westbury, New York 11390
       (516) 228-4226
       FAX: (516) 228-6569

Robert M. Lustberg, Esq.
LUSTBERG & FERRETTI
Attorneys for Plaintiffs
(possible trial counsel)
5 Garrison Road
Glens Falls, New York 12801
(518) 792-4828
FAX: (518) 792-4896

Thomas F. Cerussi, Esq.
CERUSSI & SPRING
Attorneys for Defendants
 BARTONBRANDS, LTD., and
 BARTON BEERS, LTD.
One North Lexington Avenue
White Plains New York 10601-1700
(914) 948-1200
FAX (914) 948-1579

# EXHIBIT "A"

**CV 08 3372**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NICHOLAS GALLELLI, an infant, by and through
his Parents and Natural Guardians, MARC GALLELLI
and LINDA GALLELLI, and MARC GALLELLI
and LINDA GALLELLI, Individually,

                                        Plaintiffs,   (S.I.)

        - against -

CROWN IMPORTS, LLC, GRUPO MODELO, S.A.
de C.V., aka G MODELO CORPORATION,
BARTON BRANDS, LTD., and
BARTON BEERS, LTD.,

                                        Defendants.

------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 19 2008   ★

LONG ISLAND OFFICE
COMPLAINT
AND DEMAND
FOR JURY TRIAL

WEXLER, J.

LINDSAY, M.

8/14/08

Plaintiffs, complaining of defendants, by and through their attorneys, the Law

Office of Robert F. Danzi, allege as follows:

### Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 USC 1332(a)

and (c) because it is between citizens of different states, and the amount in controversy

exceeds $75,000 exclusive of interest and costs.

### Parties and Venue

2.      Plaintiff Nicholas Gallelli, an infant born in 2006, is an individual who

resides at 35 Babylon Street, Town of Islip Terrace, County of Suffolk, State of New

York ("the infant plaintiff" or Nicholas Gallelli) within the Eastern District of New York.

Case 2:08-cv-03372-LDW-ARL     Document 1     Filed 08/19/2008     Page 2 of 12

3.      Plaintiffs Marc Gallelli and Linda Gallelli, who reside at the same address, are individuals over the age of eighteen years and the parents and natural guardians of the infant plaintiff.

*DKI*

4.      Upon information and belief, defendant Crown Imports, LLC ("Crown") is, and at all times relevant, was a corporation incorporated in the State of Delaware, having its principal place of business in or around the City of Chicago, State of Illinois.

*Deny but admit that Crowns Imports LLC is a limited liability company*

5.      Upon information and belief, Crown is a joint venture corporation which consists of co-defendants Grupo Modelo, S.A. de C.V. aka G Modelo Corporation, and Barton Brands, Ltd. and Barton Beers, Ltd.

*D*

6.      Upon information and belief, Crown, is, and was at the times relevant, engaged in the brewing, bottling, distribution, importing into the United States, marketing and sale of beer, including, but not limited to a beer sold under the name Corona Extra, which is the subject of this action.

*D*

7.      Upon information and belief, Crown, by and through its above noted joint venturors, is solely responsible for the brewing, bottling, importing into the United States, marketing, distribution and sale of Corona Extra throughout the entire United States.

*D*

8.      Upon information and belief, Corona Extra is regularly distributed by Crown and marketed and sold by it in the State of New York, including within the Eastern District of New York, and Crown, which therefore regularly conducts business in the State of New York, is subject to the personal jurisdiction of this Court.

*DKI*

9.      Upon information and belief, defendants Barton Brands, Ltd. and Barton Beers, Ltd., its subsidiary, (collectively, Barton) is a Delaware corporation, having its principal place of business in the City of Chicago, State of Illinois, 60603.

*DKI*


2

DKI

10.    Upon information and belief, Barton is, as part of the Crown joint venture, solely responsible for the importation of, marketing, distribution and sale of Corona Extra in the entire United States.

DKI

11.    The bottle of Corona Extra which is the subject of this action bears the logo of Barton Beers, Ltd., showing the Chicago zip code 60603.

12.    Upon information and belief, Corona Extra is regularly distributed by

DKI

Barton and marketed and sold by it in the State of New York, including within the Eastern District of New York, and said defendants, therefore regularly conduct business in the State of New York, and are subject to the personal jurisdiction of this Court. Upon information and belief, Barton has an agent for service of process located in Rochester, New York.

13.    Upon information and belief, defendant Grupo Modelo, S.A. de C.V., a Mexican corporation, with its principal place of business in Mexico, conducts business in the United States as G Modelo Corporation, a Delaware corporation, having its principal place of business within the United States in the City of Wilmington, State of Delaware (Grupo Modelo).

14.    Upon information and belief, Grupo Modelo is solely responsible for brewing, bottling and exporting into the United States the beer marketed and sold under the name of Corona Extra. A remaining fragment of the bottle of Corona Extra which is the subject of this action bears the statement "Bottled Beer from Mexico" and the metal cap which is still affixed bears the name "Corona Extra."

3

Case 2:08-cv-03372-LDW-ARL   Document 59   Filed 04/19/10   Page 20 of 67 PageID #: 1141
Aug-21-2008  16:19   From-FRONT DESK                                +5859808721      T-363  P.010/020  F-451

Case 2:08-cv-03372-LDW-ARL     Document 1     Filed 08/19/2008     Page 4 of 12

15.    Upon information and belief, Corona Extra brewed, bottled and exported to the United States by Grupo Modelo is regularly distributed, marketed and sold in the State of New York, including within the Eastern District of New York, and said defendant, which therefore regularly conducts business in the State of New York, is subject to the personal jurisdiction of this Court. Upon information and belief, Grupo Modelo has an agent for service of process located in Wilmington, Delaware and City of New York, State of New York.

16.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. 1391(a), because this action is founded on diversity jurisdiction, and all the plaintiffs reside, and the claim arose, in the County of Suffolk, in the Eastern District of New York.

Facts

17.    On July 4, 2007, the infant plaintiff, accompanied by his parents, plaintiffs Marc and Linda Gallelli, attended a July 4th family gathering at the home of his uncle Michael Rubino, located at 135 Burr Road, Town of East Northport, County of Suffolk, State of New York.

18.    In the early afternoon of said date, at said location, a glass bottle of Corona Extra, manufactured, brewed, bottled, exported, imported, distributed, marketed and sold by defendants (hereinafter, the Bottle), exploded.

19.    Glass from the Bottle pierced the left eye of the infant plaintiff, causing pain, suffering, serious and permanent injury, and permanent disability. Upon information and belief, the infant plaintiff suffered severe visual impairment in his left eye caused by glass shards from the Bottle, and has endured multiple surgeries on the

4

Aug-21-2008  16:19    From-FRONT DESK                          +5853898721                T-363  P.011/020  F-451

eye.  The infant plaintiff has been permanently disabled and disfigured as a direct and proximate result of the explosion of the Bottle of Corona Extra.

20.    Upon information and belief, at the time of the explosion, the Bottle of Corona Extra was in a cooler of ice together with other bottles and cans of soda, beer and water.

21.    Upon information and belief, the Bottle was in its original unopened condition at the time of the explosion.  After the explosion, the original metal cap bearing the logo "Corona Extra" was still in place on the neck fragment of the Bottle.  The neck fragment of the Bottle bears the numbers: GJ27CO88 17:57.  Another large fragment of the Bottle bears the remains of a label bearing a bar code, the words Barton Beers, Ltd., a fragment of an address, "60603 USA", and a surgeon general warning.

22.    Upon information and belief, the explosion of the Bottle and the injury to the infant plaintiff were caused by improper pressure inside the bottle, defective manufacture of the bottle, poorly controlled bottling, poor annealing of the bottle, and other causes beyond the control of the infant plaintiff or plaintiffs or parties other than defendants.

23.    As a direct and proximate result of the explosion of the Bottle and the conduct of defendants, plaintiffs have been damaged, for which defendants are jointly and severally liable to them.  The infant plaintiff suffered grievous injury, pain, suffering, visual impairment, multiple surgeries, disfigurement and permanent disability.  Marc and Linda Gallelli have incurred costs and out of pocket expenses, time lost from work, emotional distress, and other damages.

5

### As and for a First Cause of Action

24.   Plaintiffs repeat and reallege each and every allegation set forth at paragraphs "1" through "23" as if fully set forth herein.

25.   Upon information and belief, at the times relevant, defendants solely engaged in and exercised exclusive control over the brewing and manufacturing of Corona Extra, and over the manufacture, specifications, selection, and inspection of all containers in which it is bottled, exported, distributed and sold, including the Bottle which caused injury to the infant plaintiff herein.

26.   Upon information and belief, at the times relevant, defendants solely engaged in and exercised exclusive control over the bottling of Corona Extra, including the Bottle which caused injury to the infant plaintiff herein.

27.   Upon information and belief, defendants, at the times relevant, by and through their joint venture, solely engaged in and exercised exclusive control over the import into the United States, marketing, distribution and sale to retailers for ultimate sale to consumers within the United States, of Corona Extra, including the Bottle which caused injury to the infant plaintiff herein.

28.   Defendants, individually, jointly, severally, their agents and employees, had a duty to manufacture the Corona Extra product in a safe condition and to package and bottle same free of excessive internal pressure, defects on the bottle and in proper and safe containers to withstand the  internal pressure of the contents and thermal changes so no harm would come to the infant plaintiff and/ or other persons, when the product was

6

being used for the purpose for which it was intended, marketed, exported, imported, sold and distributed, in a manner which was intended and reasonably foreseeable.

29.    Upon information and belief, defendants individually, jointly, severally, through their agents and employees, in violation of their aforesaid duty of care, unreasonably and negligently failed to manufacture the Corona Extra product in a safe condition and to package and bottle same free of excessive internal pressure, defects in the bottle and in a proper and safe container to withstand the internal pressure of the contents and thermal changes so no harm would come to the infant plaintiff.

30.    Upon information and belief, defendants individually, jointly, severally, through their agents and employees, unreasonably and negligently manufactured, bottled and packaged the Corona Extra product in an unsafe condition insufficient to withstand the internal pressure of the contents and the thermal changes foreseeable so no harm would come to the infant plaintiff.

31.    As a direct and proximate result of defendants' negligence, the infant plaintiff has been injured in the amount of $15,000,000, for which defendants are jointly and severally liable to him.

### As and for a Second Cause of Action

32.    Plaintiffs repeat and reallege each and every allegation set forth at paragraphs "1" through "23" and "25" through "31" as if fully set forth herein.

33.    The injury suffered by the infant plaintiff as a result of the explosion of the Bottle is of a type which ordinarily would not occur absent negligence by defendants in the manufacture, bottling, inspection, import, export, and distribution of the Bottle of Corona Extra.

7





34. Plaintiffs exercised no control over the manufacture, bottling, inspection, import, export, and distribution of the Bottle of Corona Extra, which were solely within the control of defendants.

35. Plaintiffs had no ability to detect that the manufacture, bottling, inspection, import, export, and/or distribution of the Corona Extra had been performed in an unsafe manner or using an unsafe container unable to withstand the internal pressure of the Bottle contents, and therefore were unable to take steps to protect themselves or the infant plaintiff.

36. For the foregoing reasons, defendants are jointly and severally liable to the infant plaintiff in the amount of $15,000,000 under the doctrine of *res ipsa loquitor*.

### As and for a Third Cause of Action

37. Plaintiffs repeat and reallege each and every allegation set forth at paragraphs "1" through "23", "25" through "31", and "33" through "36" as if fully set forth herein.

38. Upon information and belief, the unsafe pressure within the Bottle and the unsafe and insufficient annealing and manufacture of the Bottle made the Bottle a defective and dangerous product, unfit to enter the stream of commerce.

39. Upon information and belief, defendants exercised exclusive control over the manufacture of the Corona Extra and the bottling of the Bottle, as well as exclusive control over product quality control, safety, inspection, and the distribution of the Bottle and placement of the Bottle into the marketplace for purchase at retail and use by consumers like plaintiffs, and others attending the family gathering on July 4, 2007.

8

40.    At the time relevant, the Bottle was being used in the manner and for the purpose for which it was intended when it was marketed by defendants.

41.    At all times relevant, it was reasonably foreseeable that the Bottle would be placed in a cooler with ice at a gathering of friends and family.

42.    Prior to the explosion, the Bottle was intact, in the condition in which it was marketed by defendants and as it was when removed from its packaging, bearing the label and metal cap affixed by defendants.

43.    Defendants are strictly liable to the infant plaintiff, jointly and severally, in the amount of $15,000,000 for his injuries caused by the defective product which grievously injured him.

### As and for a Fourth Cause of Action

44.    Plaintiffs repeat and reallege each and every allegation set forth at paragraphs "1" through "23", "25" through "31", "33" through "36", and "38" through "43" as if fully set forth herein.

45.    Upon information and belief, the Bottle was purchased by plaintiff Marc Gallelli or others attending the gathering of July 4th, 2007.

46.    At the times relevant, due to its defective and dangerous properties, the Bottle was unfit for the purposes for which it was marketed, sold and intended - chilled in a cooler, for consumption by consumers at a social gathering.

47.    By placing the Bottle into the stream of commerce, and marketing it for purchase, handling, use and consumption by consumers, defendants breached their implied warranty of fitness.

9

Case 2:08-cv-03372-LDW-ARL    Document 59    Filed 04/19/10    Page 26 of 67 PageID #: 1147
Aug-21-2008  15:20   From-FRONT DESK                                           T-963  P.010/020  F-461
Case 2:08-cv-03372-LDW-ARL    Document 1    Filed 08/19/2008    Page 10 of 12

48.     As a direct and proximate result of defendants' breach of their implied warranty of fitness, the infant plaintiff has been injured in the amount of $15,000,000, for which defendants, jointly and severally, are liable to him.

**As and for a Fifth Cause of Action on behalf of Plaintiffs Marc and Linda Gallelli**

49.     Plaintiffs repeat and reallege each and every allegation set forth at paragraphs "1" through "23", "25" through "31", "33" through "36", "38" through "43", and "45" through "48" as if fully set forth herein.

50.     At all times herein, plaintiffs Marc Gallelli and Linda Gallelli were, and still are the parents of the infant plaintiff Nicholas Gallelli.

51.     As a result of the foregoing injuries to their infant son, Marc and Linda Gallelli have sustained damages due to the loss of companionship of their son, and other damages.

52.     As a direct and proximate result of the acts and omissions of defendants set forth herein, Marc and Linda Gallelli have been damaged in the amount of $1,000,000 for which defendants are jointly and severally liable to them.

**Demand for Jury Trial**

53.     Plaintiffs demand a trial by jury of all issues herein.

WHEREFORE, plaintiffs respectfully demand:

(a) judgment on behalf of Nicholas Gallelli in the amount of $15,000,000 in compensatory damages;

(b) judgment on behalf of Marc and Linda Gallelli in the amount of $1,000,000 in compensatory damages;

(c) the costs of the action; and

10

(d) such other and further relief as may be just and proper.

Dated: Westbury, New York
August 14, 2008

Respectfully submitted,
LAW OFFICE OF ROBERT F. DANZI
Attorney for Plaintiffs

By:

Robert F. Danzi
Bar Roll # RD 5447
900 Merchants Concourse, Suite 214
Westbury, New York 11590
(516) 228-4226

11

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

NICHOLAS GALLELLI, an infant by and through
his Parents and Natural Guardians, MARC
GALLELLI and LINDA GALLELLI, and MARC
GALLELLI and LINDA GALLELLI, Individually,

                       Plaintiffs,

   -against-

CROWN IMPORTS, LLC, GRUPO MODELO, S.A.
de C.V., aka G MODELO CORPORATION, BARTON
BRANDS, LTD., and BARTON BEERS, LTD.,

                    Defendants.

-------------------------------------------------------------X

Index No. CV 08 3372

**VERIFIED ANSWER
WITH DEMANDS**

*US
9/29/08*

      Defendant, CROWN IMPORTS, LLC, by their attorneys MORENUS,

CONWAY, GOREN & BRANDMAN, answering the plaintiff's complaint herein,

respectfully shows to the Court:

      1:    Defendant denies any knowledge or information sufficient to form a

belief as to any of the allegations contained in paragraphs "1", "2", "3", "8", "9",

"10", "11", "12", "13", "14", "15", "16" and "17" of plaintiff's complaint.

      2:    Defendant denies each and every allegation contained in paragraph

"4" of plaintiff's complaint, except admit that Crown Imports, LLC is a Limited

Liability Company.

      3:    Defendant denies each and every allegation contained in

paragraphs "5", "6", "7", "18", "19", "20", "21", "22" and "23" of plaintiff's

complaint.

## ANSWERING THE ALLEGED FIRST CAUSE OF ACTION

4:   In answer to paragraph "24", defendant repeats and reiterates each and every answer made to paragraphs "1" to "23" inclusive, with the same force and effect as though set forth herein once again at length.

5:   Defendant denies each and every allegation contained in paragraphs "25", "26", "27", "28", "29", "30" and "31" of plaintiff's complaint.

## ANSWERING THE ALLEGED SECOND CAUSE OF ACTION

6:   In answer to paragraph "32", defendant repeats and reiterates each and every answer made to paragraphs "1" to "31" inclusive, with the same force and effect as though set forth herein once again at length.

7:   Defendant denies each and every allegation contained in paragraphs "33", "34", "35" and "36" of plaintiff's complaint.

## ANSWERING THE ALLEGED THIRD CAUSE OF ACTION

8:   In answer to paragraph "37", defendant repeats and reiterates each and every answer made to paragraphs "1" to "36" inclusive, with the same force and effect as though set forth herein once again at length.

9:   Defendant denies each and every allegation contained in paragraphs "38", "39", "40", "41", "42" and "43" of plaintiff's complaint.

## ANSWERING THE ALLEGED FOURTH CAUSE OF ACTION

10:   In answer to paragraph "44", defendant repeats and reiterates each and every answer made to paragraphs "1" to "43" inclusive, with the same force and effect as though set forth herein once again at length.

## AS IN FOR A SECOND AFFIRMATIVE DEFENSE

17:    If the answering defendants are found liable, such liability is less than or equal to 50% of the total liability of all persons who may be found liable and therefore these answering defendants' liability shall be limited to their equitable share, pursuant to CPLR Article 16.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

18:    Upon information and belief, any past or future costs or expenses incurred or to be incurred by the plaintiffs for medical care, dental care, custodial care of rehabilitative services, loss of earnings or other economic loss, has been or will with reasonable certainty be replaced or indemnified in whole or in part from a collateral source as defined in Section 4545(c) of the New York Civil Practice Law and Rules.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

19:    Any injuries and damages sustained by plaintiff were the result of the misuse and/or abuse of the aforesaid Glass Bottle of Corona Extra by plaintiffs, plaintiffs' friends, relatives and other parties.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

20:    Upon information and belief, after the Glass Bottle of Corona Extra left the control of this defendant, it was subject to abuse, alteration, change, improper installation or operation by persons not in the employ or control of this defendant; which alteration, change, abuse, improper installation or operation proximately caused the injuries complained of by plaintiff in the

Verified Complaint.  Such change in condition bars the action as against this defendant.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

21:  To the extent any claims purport to sound in breach of warranty, they are barred by reason of lack of privity.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

22:  The product was fit and proper for the use for which it was designed and intended.

### AS AND FOR A CROSS-COMPLAINT FOR BREACH OF CONTRACT AGAINST THE DEFENDANTS, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION, BARTON BRANDS, LTD. And BARTON BEERS, LTD.

23:  That if plaintiff was caused damages as alleged in the complaint through any acts other than the plaintiff's own negligence, carelessness and recklessness, said damages sustained due to the breach of lease/contract/ warranty by the above-named co-defendants, their agents, servants and/or employees.

24:  If plaintiff should recover judgment against the defendant, then the above-named co-defendants shall be liable to the answering defendant because of this breach and for the alleged occurrence and the answering defendant is hereby entitled to indemnification from and judgment over and against the above-named co-defendants for all or part of any verdict or judgment which plaintiff may recover in such amounts as a Jury or Court may direct.

25:   That by reason of this action, said answering defendant has been and will be put to costs and expenses, including attorneys' fees.

26:   The answering defendant demands judgment dismissing the complaint herein as to the answering defendant and further demands judgment over and against the above-named co-defendants for the amount of any judgment which may be obtained herein by the plaintiff against the answering defendant or in such amount as the Court or Jury may direct together with the costs and disbursements of the action.

**AS AND FOR A CROSS-COMPLAINT FOR COMMON LAW INDEMNITY AGAINST THE DEFENDANTS, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION, BARTON BRANDS, LTD. And BARTON BEERS, LTD.**

27:   That if the plaintiff was caused to sustain damages at the time and place set forth in the plaintiff's complaint through any carelessness, recklessness and/or negligence other than the plaintiff's own, such damages were sustained whole due to the primary and active carelessness, recklessness and negligence and/or negligent acts of omission by the co-defendants named above, their agents, servants and/or employees with the negligence of the answering defendant, if any, being secondary, derivative and by operation of law.

28:   Further, if plaintiff should recover judgment against the answering defendant, then the co-defendants shall be liable to indemnify the answering defendant in whole for the amount of any recovery obtained herein by the plaintiff against the answering defendant as the Court or Jury may direct.

29: That by reason of this action, said answering defendant has been and will be put to costs and expenses including attorneys' fees, and, the answering defendant demands judgment dismissing the complaint herein as to the answering defendant and further demands judgment over and against the above-named co-defendants for the amount of any judgment which may be obtained herein by the plaintiff against the answering defendant or in such amount as the Court or Jury may direct together with the costs and disbursements of the action.

**AS AND FOR A CROSS-COMPLAINT FOR COMMON LAW NEGLIGENCE AGAINST THE DEFENDANTS, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION, BARTON BRANDS, LTD. And BARTON BEERS, LTD.**

30: That if the plaintiff was caused to sustain damages at the time and place set forth in the plaintiff complaint through any carelessness, recklessness and/or negligence other than the plaintiff own, such damages were sustained in whole or in part by reason of the carelessness, recklessness and negligence and/or negligent acts of omission or commission by the co-defendants, their agents, servants and/or employees.

31: Further, if plaintiff should recover judgment against the answering defendant, then the co-defendants shall be liable to the answering defendant on the basis of apportionment of responsibility for the alleged occurrence and the answering defendant are entitled to contribution from and judgment over and against the co-defendants for all or part of any verdict or judgment which plaintiff may recover in such amounts as a Jury or Court may direct.

32:   The answering defendant demands judgment dismissing the complaint herein as to the answering defendant and further demands judgment over and against the co-defendants named above for the amount of any judgment which may be obtained herein by the plaintiff against the answering defendant or in such amount as the Court or Jury may direct together with the costs and disbursements of the action.

### AS AND FOR A CROSS-COMPLAINT FOR CONTRACTUAL INDEMNITY AGAINST THE DEFENDANTS, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION, BARTON BRANDS, LTD. And BARTON BEERS, LTD.

33:   That if the plaintiff was caused to sustain damages at the time and place set forth in the plaintiff complaint through any carelessness, recklessness and/or negligence other than the plaintiff own, such damages were sustained solely and directly by reason of the carelessness, recklessness and negligence and/or negligent acts of omission or commission by the co-defendants named above, their agents, servants and/or employees.

34:   That the co-defendants and answering defendant herein entered into a contract/agreement/lease wherein the co-defendants agreed to hold harmless and indemnify and assume the defense of the answering defendant.

35:   That by reason of the foregoing, the co-defendants will be liable to indemnify and indemnify the answer defendant in whole for the amount of any recovery obtained herein by the plaintiff against the answering defendant as the Court or Jury may direct as well as any costs and disbursements.

36:    That by reason of this section, said answering defendant has been and will be put to costs and expenses including attorneys' fees.

### AS AND FOR A CROSS-COMPLAINT FOR INSURANCE COVERAGE AGAINST THE DEFENDANTS, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION, BARTON BRANDS, LTD. And BARTON BEERS, LTD.

37:    That if the plaintiff entitled to recover from the answering defendant, then the co-defendant will be obliged to indemnify the answering defendant pursuant to the terms of an agreement which provides that this defendant shall be an additional insured on the policy of liability insurance obtained by the co-defendants that in the event the co-defendants failed to procure such insurance coverage for this answering defendant; then pursuant to Kinney v. Lisk said co-defendants shall be liable for and will indemnify and hold harmless this defendant in where for any and all amounts awarded to said plaintiff as well as all costs and disbursements associated with this litigation.

38:    Further, if plaintiff or any other party should recover judgment against the answering defendant, then the third-party plaintiff shall be liable to the answering defendant on the basis of apportionment of responsibility for the alleged occurrence and the answering defendant are entitled to contribution from and judgment over and against the plaintiff for all or part of any verdict or judgment which any party may recover in such amounts as a Jury or Court may direct.

39:    This answering defendant demands judgment dismissing the complaint herein as to the answering defendant and further demands judgment over and against the plaintiff named above for the amount of any

judgment which may be obtained herein by the plaintiff against the answering defendant or in such amount as the Court or Jury may direct together with the costs and disbursements of the action.

**WHEREFORE**, Defendant, CROWN IMPORTS, LLC, demands judgment dismissing the plaintiff's Complaint herein, together with the costs and disbursements of this action.

DATED: Melville, New York
September 29, 2008

YOURS, etc.,

Brian S. Brandman, 2193
MORENUS, CONWAY,
GOREN & BRANDMAN
Attorneys for Defendants
CROWN IMPORTS, LLC
58 South Service Road
Suite 350
Melville, New York 11747
(631) 845-2600
FAX: (631) 845-2626

TO:   Robert F. Danzi, Esq.
LAW OFFICE OF
ROBERT F. DANZI
Attorneys for Plaintiffs
Bar Roll #RD 5447
900 Merchants Concourse
Suite 214
Westbury, New York 11390
(516) 228-4226
FAX: (516) 228-6569

## VERIFICATION

**BRIAN S. BRANDMAN,** an attorney duly licensed to practice law in the Courts of the State of New York, affirms the following under penalty of perjury:

That he is an associate of the firm of **MORENUS, CONWAY, GOREN & BRANDMAN, Attorneys for defendant, CROWN IMPORTS, LLC,** in this action; that he has read the foregoing **ANSWER** and knows the contents thereof, and that the same is true to the knowledge of affirmant except as to the matters therein stated to be alleged upon information and belief, and that as to those matters he believes it to be true:

That the reason why this verification is made by affirmant and not by defendant is that the defendant is a Corporation, and none of its officers is now within the County of Suffolk where affirmant has his office. That the sources of affirmant's information and the grounds of his belief as to all the matters in said Answer alleged upon information and belief are reports from and communications had with the defendant.

DATED: Melville, New York
       September 29, 2008

_____
**BRIAN S. BRANDMAN**

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK      )
                         : ss.:
COUNTY OF SUFFOLK     )

       **DEBORAH BISKING**, being duly sworn, deposes and says; that she is of 18 years and upwards;

that she is a Secretary in **MORENUS, CONWAY, GOREN & BRANDMAN, attorneys for defendant,**

**CROWN IMPORTS, LLC,** in the above entitled action; that the office address of said attorneys is 58 South

Service Road, Suite 350, Melville, New York 11747 that on **September 30, 2008** deponent served upon:

**LAW OFFICE OF ROBERT F. DANZI**
**900 Merchants Concourse**
**Suite 214**
**Westbury, New York 11390**

herein a copy of a **VERIFIED ANSWER, NOTICE TO TAKE DEPOSITION AND VARIOUS**

**DEMANDS** which is annexed as a true copy, by depositing same properly enclosed in a postpaid wrapper in

the U.S. Post Office Box at 58 South Service Road, Suite 350, Melville, New York  11747 on said date,

directed to said attorneys(s) at the above address(es) designated by said attorneys in the last paper served

herein.

                                    *Deborah Bisking*
                                  DEBORAH BISKING

Sworn to before me this date,
September 30, 2008

*Christine M. Hickey*
NOTARY PUBLIC
*CHRISTINE M. HICKEY*
*Notary Public, State of New York*
*No. 01HI6088417*
*Qualified in Suffolk County*
*Commission Expires March 3, 2011*

# EXHIBIT "C"

EX-99.2 4 dex992.htm IMPORTER AGREEMENT

**EXHIBIT 99.2**

EXECUTION COPY

**IMPORTER AGREEMENT**

between

**EXTRADE II, S.A. DE C.V.**

and

**CROWN IMPORTS LLC**

Dated: January 2, 2007

## IMPORTER AGREEMENT

This Importer Agreement ("**Agreement**"), dated this 2nd day of January, 2007, by and between Extrade II, S.A. de C.V., a sociedad anónima de capital variable organized under the laws of Mexico ("**Extrade II**"), and Crown Imports LLC, a Delaware limited liability company ("**Importer**").

### WITNESSETH:

**WHEREAS**, Extrade, S.A. de C.V. and Barton Beers, Ltd., a Maryland corporation ("**Barton**"), are parties to a certain Importer Agreement, dated as of November 22, 1996, and as amended subsequent thereto, pursuant to which Barton has exclusive rights to import and sell certain beer products of Grupo Modelo, S.A. de C. V. ("**Grupo Modelo**") or another member of the Modelo Group in an area in the United States primarily west of the Mississippi River ("**West Coast Importer Agreement**");

**WHEREAS**, Diblo, S.A. de C.V. and Barton have now agreed to establish and engage in a joint venture for the principal purpose of importing, marketing and selling Product (as defined below), and, in connection therewith, they have caused to be formed the Importer which is owned by the Modelo Party (as defined below) and Barton, and the Modelo Party and Barton are parties to a Limited Liability Company Agreement, dated of even date herewith, which governs the business operations of Importer;

**WHEREAS**, Extrade II desires to grant to Importer and Importer desires to obtain from Extrade II the exclusive right to sell Product within the Territory (defined below) on the terms and conditions set forth herein;

**NOW, THEREFORE,** in consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

1.1. For purposes of this Agreement, the following terms have the meanings set forth below:

"**Adjusted JV Commencement Price Increase**" has the meaning assigned to that term in Section 5.2(d).

"**Affiliate**" of any Person means any other Person which, directly or indirectly, controls or is controlled by that Person, or is under common control with that Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise; **provided, however,** that for purposes of this Agreement, Importer shall not be an Affiliate of Extrade II and Extrade II shall not be an Affiliate of Importer.

http://sec.gov/Archives/edgar/data/16918/000119312507000703/dex992.htm

"**Barton**" means Barton Beers, Ltd., a Maryland corporation.

"**Barton Membership Interest**" has the meaning assigned to that term in the Company Agreement.

"**Base Customer Price**" means [****]

"**Base-Year**" means the twelve (12) month period commencing on July 1, 2005, and ending on June 30, 2006.

"**Base-Year Profit**" has the meaning assigned to that term in **Section 5.2**.

"**Beer**" means beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing.

"**Business Plan**" has the meaning assigned to that term in the Company Agreement.

"**Case**" means (1) units aggregating approximately 288 ounces (except with respect to CORONITA in which instances such units shall aggregate approximately 168 ounces) plus (2) their Containers.

"**Company Agreement**" means the Amended and Restated Limited Liability Company Agreement, dated of even date herewith, by and between the Modelo Party and Barton, which governs the business operations of Importer.

"**Container**" includes the bottle, can or similar receptacle in which Product is directly placed, and the box, carton or similar item in which such receptacle is packaged.

"**Designated Brewery**" means the brewery at which Grupo Modelo produces the Product for sale to Importer.

"**Diblo**" means Diblo, S.A. de C.V., a sociedad anónima de capital variable organized under the laws of Mexico.

"**East Coast Importation Rights**" means the exclusive rights to import and sell certain brands of Beer in the United States of America except for the portion of the country included in the West Coast Importation Rights.

"**East Coast Importer Agreement**" means the Importer Agreement relating to the East Coast Importation Rights.

--------

[****]   Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

~ 2 ~

"**Extrade**" means Extrade, S.A. de C.V., a sociedad anónima de capital variable organized under the laws of Mexico.

"**Extrade II**" means Extrade II, S.A. de C.V., a sociedad anónima de capital variable organized under the laws of Mexico.

"**FOB**" means "free on board" the Designated Brewery; meaning for purposes of this Agreement that (i) Extrade II shall bear the expense and risk of loss of transporting Product to the Designated Brewery and (ii) that title to Product shall pass from Extrade II to Importer at the Designated Brewery.

"**Force Majeure**" means the inability, after giving effect to the allocation requirements of **Section 4.1**, of Extrade II to supply Product pursuant to **Article IV** as a direct result of: acts of God; strikes or other labor unrest; civil disorder; fire; explosion; perils of the sea; flood; drought; war; riots; sabotage; terrorism; accident; embargo; priority, requisition or allocation mandated by governmental action; changes in laws or regulations that impair the Production or export of Beer into the Territory; shortage or failure of supply of ingredients or raw materials necessary to produce Product; or other cause beyond control of Extrade II or the Modelo Group. The duration of any Force Majeure occurrence is limited to the period during which Extrade II is unable to supply Product, or make reasonable alternative arrangements to supply Product, due of the event or condition giving rise to such Force Majeure occurrence.

"**herein**" and "**hereunder**" refer to this entire Agreement.

"**Importer**" means Crown Imports LLC, a Delaware limited liability company.

"**JV Commencement Price Increase**" has the meaning assigned to that term in **Section 5.2**.

"**law**", unless otherwise expressly stated in this Agreement, includes statutes, regulations, decrees, ordinances and other governmental requirements, whether federal, state, local or of other authority.

"**Marcas Modelo**" means Marcas Modelo, S.A. de C.V., a sociedad anónima de capital variable organized under the laws of Mexico.

"**Modelo Group**" means Grupo Modelo and all Persons that, now or in the future, are related to Grupo Modelo by virtue of Grupo Modelo's direct or indirect share ownership; provided, however, that for purposes of this Agreement, Importer shall not be a member of the Modelo Group.

"**Modelo Party**" means GModelo Corporation.

"**Pass-Through Revenues**" means [****]

---

[****]   Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 3 -

"**Person**" means any individual, corporation, partnership, limited partnership, limited liability company, joint venture, syndicate, sole proprietorship, a company with or without share capital, unincorporated association, trust, trustee, executor, administrator or other legal representative, regulatory body or agency, government or governmental agency, authority or entity, however designated or constituted.

"**Price**" has the meaning assigned to that term in **Section 5.1.**

"**Price Adjustment**" has the meaning assigned to that term in **Section 5.4.**

"**Product**" means (i) Beer packaged in Containers bearing one or more of the Trademarks, or (ii) any other Beer, whether or not bearing one or more Trademarks, which is produced, marketed or sold by Grupo Modelo or any member of the Modelo Group in or into the Territory during the term of this Agreement.

"**Production**" means the manufacturing, bottling and packaging of Beer.

"**Strategic Pricing Initiative**" has the meaning assigned to that term in the Company Agreement.

"**Sub-license Agreement**" means the Sub-license Agreement dated as of the date hereof by and between Importer and Marcas Modelo.

"**Territory**" means the fifty states of the United States of America, the District of Columbia and Guam.

"**Trademarks**" means the trademarks described in **Exhibit A** to this Agreement as belonging to a member of the Modelo Group, as such Exhibit may be supplemented from time to time pursuant to **Section 3.4**, together with the trademark rights related thereto referred to in **Section 2.8** of the Sub-license Agreement.

"**West Coast Importation Rights**" means all of Barton's rights to import Beer under the West Coast Importer Agreement.

"**West Coast Importer Agreement**" means the Importer Agreement, dated as of November 22, 1996, by and between Barton and Extrade, as amended.

1.2. Construction

(a) Unless the context of this Agreement otherwise requires, (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (iv) the terms "Article", "Section", "Schedule" or "Exhibit" refer to the specified Article, Section, Schedule or Exhibit of this Agreement, unless otherwise specifically stated; (v) the words "include" or "including" shall mean "include, without limitation" or "including, without limitation;" and (vi) the word "or" shall be disjunctive but not exclusive.

- 4 -

(b) References to agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto.

(c) References to statutes shall include all regulations promulgated thereunder and, except to the extent specifically provided below, references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating, amending or replacing the statute or regulation.

(d) The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction shall be applied against any party. This Agreement is the joint drafting product of the parties hereto and each provision has been subject to negotiation and agreement and shall not be construed for or against any party as drafter thereof.

(e) All accounting terms used herein and not expressly defined herein shall have the meanings given to them under GAAP;

(f) All amounts in this Agreement are stated and shall be paid in United States dollars.

## ARTICLE II
## CERTAIN UNDERTAKINGS OF MODELO

Extrade II represents and warrants that (a) Extrade II has and will maintain throughout the term of this Agreement the exclusive right to sell Product for export to the Territory; (b) there is not in effect any agreement between Extrade II and any other person or entity giving any right to any such other person or entity to sell Product in the Territory; and (c) Extrade II has the full contractual and corporate power and authority to perform its obligations under this Agreement.

## ARTICLE III
## EXCLUSIVITY

3.1. Subject to the terms of this Agreement, Extrade II hereby grants to Importer the exclusive right to sell Product within the Territory, including for resale.

3.2. Importer agrees not to sell Product outside the Territory except with the prior written permission of Extrade II. Importer shall use its commercially reasonable efforts to prevent parties purchasing Product directly or indirectly from Importer from reselling such Product outside the Territory or in any manner not authorized by this Agreement.

3.3. Importer agrees that, during the term of this Agreement, Importer shall not, without Extrade II's prior written permission, purchase or sell in the Territory any Beer manufactured in Mexico other than Product.

3.4. (a) In the event, during the term of this Agreement, Extrade II or any member of the Modelo Group plans to initiate a program for the production, marketing or sale in or into the Territory of any Product for which pricing is not set forth on **Exhibit B**, Extrade II shall give Importer written notice of such plan not less than ninety (90) days before such program is

- 5 -

initiated. At the written election of Importer delivered to Extrade II within ninety (90) days after receipt by Importer of such notice, the parties shall amend this Agreement to add pricing for such Product to the list on **Exhibit B**, to add the identifying mark or marks to **Exhibit A**, to modify the definition of **"Case"** in **Article I** accordingly, and/or to add a new definition to **Article I** that describes the unit packaging of such Product if it is not a Case, such as keg or mini-keg, and to also modify the definition of **"Container"** in **Article I** accordingly. Extrade II represents and warrants that it has and will maintain throughout the term of this Agreement the exclusive right to sell such Product for export to the Territory.

(b) In the event, during the term of this Agreement, Extrade II or any member of the Modelo Group plans to use a new trademark on any Product to be sold in the Territory, Extrade II shall give Importer written notice of such plan not less than ninety (90) days before implementation thereof. At the written election of Importer delivered to Extrade II within ninety (90) days of the receipt by Importer of such notice, the parties shall amend this Agreement to add such new trademark to **Exhibit A**.

## ARTICLE IV
## SUPPLY OF PRODUCT LINE

4.1. Importer shall purchase from Extrade II, and Extrade II shall supply to Importer, such volumes of Product as are required by Importer for importation and sale within the Territory pursuant to this Agreement. [****]

---

[****]   Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 6 -

4.2. All orders for Product under this Agreement shall be made by Importer specifying the type of Product ordered and the quantities thereof. Subject to **Section 4.1** and Force Majeure, each such order shall constitute a binding obligation between Importer and Extrade II in accordance with the terms of this Agreement five (5) days after receipt thereof by Extrade II on the terms of the order, subject to modifications that the parties agree to within such five-day period.

4.3. EXCEPT AS STATED IN THIS AGREEMENT, EXTRADE II MAKES NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, CONCERNING PRODUCT.

4.4. Extrade II will supply Product to Importer FOB the Designated Brewery (whether rail or other transportation as requested by Importer). [****]

4.5. [****]

4.6. All terms and conditions set forth on any order shall be of no force and effect, other than the type of Product ordered, the quantities ordered and the mode of transportation if other than rail.

4.7. Anything in **Section 4.2** to the contrary notwithstanding, in the event of any conflict between the provisions of any order and the provisions of this Agreement (including without limitation terms of payment and warranties concerning Product), the provisions of this Agreement shall govern.

4.8. [****]

---

[****]   Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 7 -

Case 2:08-cv-03372-LDW-ARL   Document 59   Filed 04/19/10   Page 49 of 67 PageID #: 1170
http://sec.gov/Archives/edgar/data/16918/000119312507000703/dex992.htm

## ARTICLE V
## PRICING AND PAYMENT PROCEDURES

5.1. As to each Product, the price to be charged by Extrade II (the "**Price**") commencing on the date of this Agreement shall be as stated in **Exhibit B**, which Prices are subject to change as provided in **Sections 5.2, 5.3** and **5.4.**

5.2. The Price for a Case of each Product shall be increased effective as of the date hereof by twenty-five cents ($0.25) (the "**JV Commencement Price Increase**"). The parties agree that the JV Commencement Price Increase was designed to reflect the relative values of the East Coast Importation Rights and the West Coast Importation Rights and that it should be adjusted by balancing base year profits assigned to the East Coast Importation Rights and the West Coast Importation Rights for the Base-Year (the "**Base-Year Profit**") according to the following procedure:

(a) the Base-Year Profit of both the East Coast Importation Rights and the West Coast Importation Rights will be determined as a result of a due diligence process to be performed by the parties within sixty (60) days after the Closing Date;

- 8 -

(b) in order to calculate the Base-Year Profit for the West Coast Importation Rights, Barton shall provide Grupo Modelo and Extrade II no later than sixty (60) days after the Closing Date, schedules including (i) the following information relating to sales of Product under the West Coast Importation Rights during the Base-Year: (A) gross revenues, (B) volume of Product sold, (C) excise taxes, (D) costs of goods sold detailed by costs of materials, taxes, transportation and other related costs, and (E) marketing and promotional costs, (ii) Barton's contributions after marketing and promotions and (iii) Barton's selling, general and administrative costs. All information provided by Barton shall be supported by Barton's cost accounting system and Barton's revenue and expense ledgers. Grupo Modelo and Extrade II shall be entitled to check the calculations made by Barton and to review Barton's books and records that support such calculations;

(c) in order to calculate the Base-Year Profit for the East Coast Importation Rights, Extrade II shall no later than 60 days after the Closing Date, deliver schedules relating to the East Coast Importation Rights from the existing importer of Grupo Modelo products in the east coast of the United States to the extent available to Extrade II, including the following information relating to sales of Product under the East Coast Importation Rights during the Base-Year: (i) gross revenues, (ii) volume of Product sold, (iii) excise taxes, (iv) costs of goods sold detailed by costs of materials, taxes, transportation and other related costs, and (v) marketing and promotional costs. With these numbers, the parties will compute the actual contributions after marketing and promotions for the East Coast Importation Rights. If Extrade II is not able to provide the foregoing information within 60 days after the Closing Date, then such amounts will be estimated from information gathered from distributors. The parties agree that neither Extrade II nor Grupo Modelo shall be responsible in case of the lack of collaboration or response from the aforesaid distributors, and that the parties will work in good faith to obtain such information or to arrive at reasonable estimates. If the parties cannot agree on reasonable estimates, then the matter will be escalated to the Chief Executive Officers of Grupo Modelo and Constellation Brands, Inc. If those executives are unable to arrive at agreement on such estimates, then distributor revenues from the East Coast Importation Rights and contributions after marketing and promotions for the East Coast Importation Rights will be measured by actual performance of that portion of the territory that was historically a part of the East Coast Importation Rights during the first six (6) months following Closing.

To compute the Base-Year Profit for the East Coast Importation Rights from the contributions after marketing and promotions, the selling, general and administrative costs will be determined by dividing the amount of such costs incurred by Barton during the Base-Year by the actual number of cases of Product sold by Barton during the Base Year and multiplying that rate per Case by the actual number of Cases of Product sold pursuant to the East Coast Importation Rights during the Base Year;

- 9 -

(d) The parties will then model the pro forma impact of removal of the $[****] per Case discount for orders fulfilled by the Tuxtepec brewery (and any other changes in operations from that of the Base-Year that have been agreed upon by the parties prior to the date hereof) on the combined Base-Year Profit of the East Coast Importation Rights and Base-Year Profit of the West Coast Importation Rights during the Base Year. The "**Adjusted JV Commencement Price Increase**" is the quotient of (i) such combined pro forma profits minus twice the actual Base-Year Profit of the West Coast Importation Rights calculated pursuant to **Section 5.2(b)**, and (ii) the aggregate number of Cases of Product sold under the West Coast Importation Rights and under the East Coast Importation Rights during the Base Year; and

(e) the JV Commencement Price Increase should be retroactively adjusted as of the date hereof to the Adjusted JV Commencement Price Increase.

5.3. On [****], the Price for a Case of each Product shall be increased by [****], and on each of [****], the Price for a Case of each Product shall be increased by [****].

5.4. In addition to any increase in the Price determined in accordance with **Section 5.2** and **5.3**, Price shall also be adjusted as set forth in this section. In the event that Importer charges any customer of Importer for any Product, an amount that is greater than the Base Customer Price, then Importer shall pay to Extrade II, through the Strategic Pricing Initiative, an amount equal to fifty three percent (53%) of the difference between the amount Importer actually invoices such customer, excluding Pass-Through Revenues, and the amount Importer would have invoiced such customer if such Product had been priced at the Base Customer Price (a "**Price Adjustment**"). Application of this **Section 5.4** does not result in a change to Base Customer Price or to the Price as set forth on **Exhibit B.**

5.5. Except as provided in **Sections 5.2**, **5.3** and **5.4**, it is understood that the Price of Products charged by Extrade II shall not otherwise be changed unless mutually agreed by the parties.

5.6. Promptly after effecting a shipment of Product to Importer, Extrade II shall so notify Importer and provide to Importer an invoice for such shipment. Importer having received such invoice from Extrade II shall pay such invoiced price in United States Dollars within forty-five (45) days of receipt of such invoice. Importer shall be entitled to a discount of one percent of the Price for Product if (i) payment for such Product is made by Wednesday following the week in which such Product was shipped and (ii) Extrade II receives the corresponding payment by wire transfer of immediately available funds to a bank account designated by Extrade II. If the Price is not paid on its due date, the unpaid amount shall bear interest from the due date until paid at the rate of 1-1/2% per month or the maximum rate allowed by applicable law, whichever is lower.

5.7. Any Price Adjustment owing to Extrade II hereunder shall be paid by Importer in United States Dollars within forty-five (45) days of Importer delivering to its customer the invoice for the order giving rise to such Price Adjustment. Importer shall be entitled to a

---

[****]  Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 10 -

discount of one percent of the Price Adjustment if (i) payment of such Price Adjustment is made by Wednesday following the week in which the invoice for the order giving rise to the Price Adjustment was delivered to the Company's customer and (ii) Extrade II receives the corresponding payment by wire transfer of immediately available funds to a bank account designated by Extrade II. If any Price Adjustment is not paid on its due date, the unpaid amount shall bear interest from the due date until paid at the rate of 1-1/2% per month or the maximum rate allowed by applicable law, whichever is lower.

## ARTICLE VI
## PROMOTION AND ADVERTISING

[****]

## ARTICLE VII
## IMPORTER'S SALES EFFORTS

[****]

---

[****]   Approximately one page of confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 11 -

## ARTICLE VIII
### REPORTS

8.1. Importer shall deliver to Extrade II the following:

(a) Not later than sixty (60) days prior to the beginning of each calendar year, a Forecast Report in the form of **Exhibit D** indicating by calendar months the purchases of Product Importer expects to make during such year under this Agreement by brand, label, package and any other distinguishing presentation required by governmental authorities.

(b) Not later than thirty (30) days prior to the beginning of each calendar month, a Forecast Report Update in the form of **Exhibit E** updating, for the calendar months remaining in such year, the Forecast Report originally delivered for the corresponding calendar year.

8.2. Importer shall deliver each report required by **Section 8.1** both (a) in writing and (b) by such other means of electronic reproduction as Extrade II may reasonably request from time to time. Importer shall cause each such report in writing to be signed by an authorized representative of Importer or of the party who generated the report. In the event of inconsistency between a report in writing and a report by electronic means, the report in writing shall control.

8.3. No such Forecast Report or Forecast Report Update shall constitute an offer or obligation of Importer to purchase Product. No receipt of a Forecast Report or Forecast Report Update shall constitute an acceptance or obligation of Extrade II to sell Product.

8.4. Extrade II may at its own expense, upon reasonable advance notice to Importer, through accountants or other representatives designated by Extrade II for such purposes, enter during normal business hours any storage facility or business office owned or controlled by Importer and examine such facilities, inventories and that portion of the books and records of Importer needed to determine the accuracy of any report delivered under **Section 8.1**.

- 12 -

## ARTICLE IX
## COMPLIANCE WITH LAWS

9.1. During the term of this Agreement, Importer shall obtain and maintain in good standing, or otherwise have valid access to, all U.S. (federal and state) licenses required for the performance of this Agreement by Importer, including without limitation all licenses required for the importation or sale of Product in the Territory (**"Requisite Licenses"**). Within thirty (30) days after the amendment, loss or new issuance of any Requisite License, Importer shall deliver to Extrade II written notice thereof.

9.2. Importer agrees (a) to comply with all laws applicable to the selling of Product, including, without limitation, those relating to labels and identifying marks on Containers, and (b) not to commit any act that will subject Extrade II to any civil, criminal, or other liability. Importer agrees to indemnify and hold Extrade II harmless with respect to any breach by Importer of the preceding sentence.

9.3. As regards laws relating to labels or other identifying marks on Containers supplied by Extrade II, Importer shall be deemed to have fully satisfied Importer's obligations if, within a reasonable period prior to Extrade II's shipment of Product identified by any new form of label or mark, Importer obtains approval of the labels or marks to be used on such Container and advises Extrade II fully and correctly in writing of all requirements of corresponding law. After receipt from Importer of such written advice, Extrade II shall be responsible for the labeling and marketing of Containers in conformity with such advice.

9.4. As and when requested by Importer, Extrade II shall use its commercially reasonable efforts to sign and deliver to Importer such documents as Importer requires for filing with governmental authorities to comply with laws applicable to the importation or sale of Product.

## ARTICLE X
## INDEMNIFICATION AND INSURANCE

[****]

---

[****]   Approximately one page of confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

- 13 -

10.4. With respect to the insurance described in **Sections 10.2** and **10.3**, (a) each party shall pay all costs and expenses of the insurance it carries, and (b) each party shall promptly deliver to the other, at the request of the other, a copy of the insurance policies and other documentation evidencing compliance with such party's obligations to maintain such insurance.

### ARTICLE XI
### TERM

11.1. The term of this Agreement shall commence on the date hereof and shall continue until the earlier of (a) January 2, 2106 or (b) the date on which the Modelo Party purchases Barton's interest in Importer pursuant to the Company Agreement, it being agreed that this Agreement shall terminate on such earlier date.

- 14 -

11.2. The parties acknowledge and agree that, except as otherwise set forth in **Section 11.3**, so long as Barton is a member of Importer, Extrade II shall have no right to terminate this Agreement notwithstanding any breach of this Agreement by Importer.

11.3. In the event that Importer fails to make a material payment under **Section 5.6** or under **Section 3.2** of the Sub-license Agreement, then Extrade II may terminate this Agreement, provided Extrade II gives Importer, Diblo and Barton written notice of such failure and such failure continues for more than sixty (60) days after giving such notice to such Persons.

11.4. Subject to Importer's rights under **Section 2.7** of the Sub-license Agreement, which shall be given precedence, if this Agreement is terminated for any reason, Importer agrees (provided such use is legal) that Extrade II may use Containers and labels theretofore manufactured showing Importer as the importer , either "as is" or with such changes as are necessary to make such use legal, until Extrade II's inventories of such Containers and labels are used up; and Importer agrees to sign all documents that may be necessary for such purpose.

## ARTICLE XII
## GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to its principals of conflicts of laws that would require application of the substantive laws of any other jurisdiction. Importer and Extrade II irrevocably consent to the exclusive personal jurisdiction and venue of the courts of the State of New York or the federal courts of the United States, in each case sitting in New York County, in connection with any action or proceeding arising out of or relating to this Agreement. Importer and Extrade II hereby irrevocably waive, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of such action or proceeding brought in such a court and any claim that any such action or proceeding brought in such court has been brought in an inconvenient forum. Importer and Extrade II irrevocably consent to the service of process with respect to any such action or proceeding in the manner provided for the giving of notices under **Section 13.4**, provided, the foregoing shall not affect the right of either Importer or Extrade II to serve process in any other manner permitted by law. Importer and Extrade II hereby agree that a final judgment in any suit, action or proceeding shall be conclusive and may be enforced in any jurisdiction by suit on the judgment or in any manner provided by applicable law.

## ARTICLE XIII
## MISCELLANEOUS

13.1. Neither party may assign any right under this Agreement without the prior written consent of the other party. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

13.2. The captions used in this Agreement are for convenience of reference only and shall not affect any obligation under this Agreement.

13.3. This Agreement may be executed in counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts, taken together, shall constitute one and the same instrument. Signatures sent by facsimile shall constitute and be binding to the same extent as originals. This Agreement may not be amended except by an instrument in writing signed by both parties.

- 15 -

13.4. Any notice, claims, requests, demands, or other communications required or permitted to be given hereunder shall be in writing and will be duly given if: (a) personally delivered, (b) sent by facsimile or (c) sent by Federal Express or other reputable overnight courier (for next business day delivery), shipping prepaid as follows:

|  |  |
|---|---|
| If to Importer: | Crown Imports LLC<br>One South Dearborn St, Suite 700<br>Chicago, IL 60603<br>Attention: President<br>Telephone: (312) 873-9600<br>Facsimile: (312) 346-7488 |
| With a copy to: | Barton Beers, Ltd.<br>One South Dearborn Street<br>Suite 1700<br>Chicago, IL 60603<br>Attention: General Counsel<br>Telephone: (312) 346-9200<br>Facsimile: (312) 346-7488 |
| With a second copy to: | Nixon Peabody LLP<br>1300 Clinton Square<br>Rochester, NY<br>Attention: James A. Locke III<br>Telephone: (585) 263-1000<br>Facsimile: (585) 346-1600 |
| If to Extrade II: | Extrade II, S.A. de C.V.<br>Lago Alberto No. 156<br>Col. Anahuac<br>11320 Mexico, D.F.<br>Attention: General Counsel<br>Telephone: 52 (55) 5262-1100<br>Facsimile: 52 (55) 5545-2773 |
| With a copy to: | Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Attention: David Mercado, Esq.<br>Telephone: (212) 474-1756<br>Facsimile: (212) 474-3700 |

or such other address or addresses or facsimile numbers as the person to whom notice is to be given may have previously furnished to the others in writing in the manner set forth above.

- 16 -

Notices will be deemed given at the time of personal delivery, if sent by facsimile, when sent with electronic notification of delivery or other confirmation of delivery or receipt, or, if sent by Federal Express or other reputable overnight courier, on the day of delivery.

13.5. This Agreement and the various schedules and exhibits thereto embody all of the understandings and agreements of every kind and nature existing between the parties hereto with respect to the transactions contemplated hereby. This Agreement supersedes all prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement.

13.6. To the extent that any provision of this Agreement is invalid or unenforceable in the Territory or any state or other area of the Territory, this Agreement is hereby deemed modified to the extent necessary to make it valid and enforceable within such state or area, and the parties shall promptly agree in writing on the text of such modification.

13.7. The parties acknowledge that a breach or threatened breach by them of any provision of this Agreement will result in the other entity suffering irreparable harm which cannot be calculated or fully or adequately compensated by recovery of damages alone. Accordingly, the parties agree that any party may, in its discretion (and without limiting any other available remedies), apply to any court of law or equity of competent jurisdiction for specific performance and injunctive relief (without necessity of posting a bond or undertaking in connection therewith) in order to enforce or prevent any violations of this Agreement, and any party against whom such proceeding is brought hereby waives the claim or defense that such party has an adequate remedy at law and agrees not to raise the defense that the other party has an adequate remedy at law; **provided, however,** that the foregoing rights may not be exercised in the event that Barton sells its Membership Interest in the Company pursuant to **Section 12.7** of the Company Agreement. The failure of either party at any time to require performance of any provision of this Agreement shall in no manner affect such party's right to enforce such provision at any later time. No waiver by any party of any provision, or the breach of any provision, contained in this Agreement shall be deemed to be a further or continuing waiver of such or any similar provision or breach.

13.8. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their successors and permitted assigns. Nothing in this Agreement shall give any other Person any legal or equitable right, remedy or claim under or with respect to this Agreement or the transactions contemplated hereby.

[Signature page follows]

- 17 -

Case 2:08-cv-03372-LDW-ARL   Document 59   Filed 04/19/10   Page 59 of 67 PageID #: 1180

http://sec.gov/Archives/edgar/data/16918/000119312507000705/dex992.htm

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

| EXTRADE II, S.A. DE C.V. | | CROWN IMPORTS LLC | |
|---|---|---|---|
| | /s/ Alfredo Garcia Hernandez | | |
| By: | /s/ Margarita Hugues Velez | By: | /s/ William F. Hackett |
| | Alfredo Garcia Hernandez | Name: | William F. Hackett |
| Name: | Margarita Hugues Velez | Title: | President |
| Title: | Attorney In Fact | | |

**[Signature Page to Importer Agreement]**

- 18 -

## EXHIBIT A
## TRADEMARKS

| Mark | Registration No. | Date Registered |
|------|-----------------|-----------------|
| CORONA CERVEZA & Design | 662,347 | May 27, 1958 |
| Crown & Griffins Design | 1,462,155 | Oct. 20, 1987 |
| La Cerveza Mas Fina Design | 1,495,289 | July 5, 1988 |
| CORONA (Stylized) | 1,681,366 | March 31, 1992 |
| CORONA EXTRA (Stylized) | 1,681,365 | March 31, 1992 |
| CORONA & Design | 1,689,218 | May 26, 1992 |
| CORONA EXTRA & Design | 1,729,694 | Nov. 3, 1992 |
| CORONA LIGHT | 1,727,969 | Oct. 27, 1992 |
| CORONITA EXTRA | 1,729,701 | Nov. 3, 1992 |
| CORONITA EXTRA & Design | 1,761,605 | March 30, 1993 |
| MODELO | 1,022,817 | Oct. 14, 1975 |
| MODELO ESPECIAL | 1,055,321 | Dec. 28, 1976 |
| NEGRA MODELO | 1,217,760 | Nov. 23, 1982 |
| PACIFICO | 1,726,063 | Oct. 20, 2004 |
| PACIFICO & Design | 1,336,171 | May 14, 1985 |
| PACIFICO CLARA | 2,866,272 | July 27, 2004 |

| Mark | Application Number | Application Date |
|------|-------------------|------------------|
| CROWN IMPORTS | 78944414 | August 3, 2006 |
| CROWN IMPORTS & Design | 77031783 | October 29, 2006 |

- 19 -

**EXHIBIT B**

[****]

_____

[****]  Approximately four and a half pages of confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

Case 2:08-cv-03372-LDW-ARL   Document 59   Filed 04/19/10   Page 62 of 67 PageID #: 1183
http://sec.gov/Archives/edgar/data/16918/000119312507000703/dex992.htm

## EXHIBIT C

[****]

_____

[****]  Confidential materials omitted and filed separately with the Securities and Exchange Commission. Asterisks denote such omission.

EXHIBIT C

**Forecast of Anticipated Purchases by
Crown Imports LLC During Calendar 200[ ]**

(Anticipated purchases are shown by month of anticipated shipment of indicated packages FOR/FOT the Designated Brewery, Mexico, D.F.)

| Product | Jan | Feb | Mar | Apr | May | Jun | July | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corona Extra (12 Pack Bottles) | | | | | | | | | | | | | |
| Corona Extra (6 Pack Bottles) | | | | | | | | | | | | | |
| Corona Light (12 Pack Bottles) | | | | | | | | | | | | | |
| Corona Light (6 Pack Bottles) | | | | | | | | | | | | | |
| Modelo Especial (6 Pack Cans) | | | | | | | | | | | | | |
| Modelo Especial (6 Pack Bottles) | | | | | | | | | | | | | |
| Negra Modelo (6 Pack Bottles) | | | | | | | | | | | | | |
| Pacifico (6 Pack Bottles) | | | | | | | | | | | | | |
| Coronita (6 Pack Bottles) | | | | | | | | | | | | | |

EXHIBIT D

To: Extrade II, S.A. de C.V.

Based upon information now available, Crown Imports LLC forecasts that during calendar 200[ ] Crown Imports LLC will make purchases from Extrade II, S.A. de C.V. as stated above.

Date of this Forecast: _____, 200[ ]

Crown Imports LLC

By: _____
    (Name and title of officer signing)

http://sec.gov/Archives/edgar/data/16918/000119312507000703/dex992.htm

EXHIBIT E

**Forecast of Anticipated Purchases by**
**Crown Imports LLC During Calendar 200[  ]**

(Anticipated purchases are shown by month of anticipated shipment of indicated packages FOR/FOT the Designated Brewery, Mexico, D.F.)

| Product | Jan | Feb | Mar | Apr | May | Jun | July | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corona Extra (12 Pack Bottles) | | | | | | | | | | | | | |
| Corona Extra (6 Pack Bottles) | | | | | | | | | | | | | |
| Corona Light (12 Pack Bottles) | | | | | | | | | | | | | |
| Corona Light (6 Pack Bottles) | | | | | | | | | | | | | |
| Modelo Especial (6 Pack Cans) | | | | | | | | | | | | | |
| Modelo Especial (6 Pack Bottles) | | | | | | | | | | | | | |
| Negra Modelo (6 Pack Bottles) | | | | | | | | | | | | | |
| Pacifico (6 Pack Bottles) | | | | | | | | | | | | | |
| Coronita (6 Pack Bottles) | | | | | | | | | | | | | |

EXHIBIT E

To: Extrade II, S.A. de C.V.

Based upon information now available, Crown Imports LLC forecasts that during calendar 200[ ] shown above Crown Imports LLC will make purchases from Extrade II, S.A. de C.V. as stated above.

This Forecast Update supersedes our Forecast dated _____, 200[ ] and our Forecast Update dated _____, 200[ ]

Date of this Forecast Update: _____, 200[ ]

Crown Imports LLC

By: _____ _____
    (Name and title of officer signing)

2

*Index No.: CV 08 3372*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

*NICHOLAS GALLELLI, an infant, by and through his Parents and Natural Guardians, MARC*
*GALLELLI and LINDA GALLELLI, and MARC GALLELLI and LINDA GALLELLI, Individually,*

*Plaintiffs,*

- *against* -

*CROWN IMPORTS, LLC, GRUPO MODELO, S.A. de C.V., aka G MODELO CORPORATION,*
*BARTON BRANDS, LTD., and BARTON BEERS, LTD.,*

*Defendants,*

---

STATEMENT PURSUANT TO CPLR 3402(b)
THIRD-PARTY SUMMONS AND THIRD-PARTY COMPLAINT

---

### *MORENUS, CONWAY, GOREN & BRANDMAN*
*Attorneys for Defendants/Third-Party Plaintiff*
### *CROWN IMPORTS, LLC*
*58 South Service Road, Suite 350*
*Melville, New York 11747*
*(631) 845-2600*

---

*The Below signature attests to the following papers:* Statement Pursuant to CPLR 3402(b), Third-Party Summons and
Third-Party Complaint

*By:* _____

    *BRIAN S. BRANDMAN*

---

*Service of a copy of the within* _____ *is hereby admitted.*
*Dated:* _____                     _____
                                     *Attorney(s) for*

**PLEASE TAKE NOTICE**

   **NOTICE OF**    *That the within is a (certified) true copy of a* _____ *entered in the office of the clerk*
     **ENTRY**    *of the within named Court on* _____ *, 2010*

   **NOTICE OF**    *That an Order of which the within is a true copy will be presented for settlement to*
 **SETTLEMENT**    *the Hon.* _____ *on of the judges of the within named Court at* _____ *on* _____ ,

*Dated:  Melville, New York*

*Morenus, Conway, Goren & Brandman*
*58 South Service Road, Suite 350*
*Melville, New York 11747*
*631) 845-2600*
