```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK

------------------------------X
GALLELLI, et al.,                 : Docket  08-cv-3372 LDW-ARL
                  Plaintiff,      :
     - versus -                   : U.S. Courthouse
CROWN IMPORTS, LLC, et al.,       : Central Islip, New York
                  Defendant       : September 28, 2010
------------------------------X

         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE ARLENE R. LINDSAY
                 UNITED STATES DISTRICT JUDGE
```

**A P P E A R A N C E S :**

| | |
|---|---|
| **For Plaintiff:** | **Robert Danzi, Esq.**<br>Law Offices of Robert F. Danzi<br>900 Merchants Concourse, Ste 214<br>Westbury, New York 11590<br>bob@danzilaw.com |
| | **Robert M. Lustberg, Esq.**<br>Lustberg & Ferretti<br>5 Garrison Road<br>Glens Falls, New York 12801<br>rlustberg@verizon.net |
| **For Defendant,<br>Grupo Modelo:** | **Jefferson Eliot Bell, Esq.**<br>**Gary A. Bornstein, Esq.**<br>Cravath Swaine & Moore<br>825 Eighth Avenue<br>New York, New York 10019<br>**jbell@cravath.com**<br>**gbornstein@cravath.com** |
| **For Barton Brands:** | **Thomas F. Cerussi, Esq.**<br>Cerussi & Spring<br>One North Lexington Avenue<br>White Plains, New York 10601<br>tcerussi@cerussilaw.com |
| **Transcriber:** | Typing At Your Doorstep<br>(888) 866-5134; (800) 860-5722 fax |

```
         Proceedings recorded by electronic sound-recording,
            transcript produced by transcription service
```

2

Gallelli et al v. Crown Imports et al - 9/28/10

1          THE COURT:  -- on behalf of Mr. Danzi.

2          MR. DANZI:  Yes, your Honor.

3          THE COURT:  All right.  You've reviewed that.

4   Okay.

5          MR. BORNSTEIN:  And, your Honor, I sent a

6   response to the letter to the Court yesterday.

7          THE COURT:  You did?

8          MR. BORNSTEIN:  Yes.  Yesterday afternoon, I

9   believe around 3 o'clock.

10         THE COURT:  Okay. I don't think I saw that.  So

11  just give me a minute.  All right. And you say you're

12  working together, relevant facts.  What do you have to

13  report?  And please identify yourself for the record.

14         MR. BORNSTEIN:  Absolutely, your Honor.  Gary

15  Bornstein from Cravath.

16         THE COURT:  Okay.

17         MR. BORNSTEIN:  As I spoke with counsel for

18  plaintiffs this morning, we walked through what it is

19  that I've learned.  I'm happy to hear from the Court as

20  well.  We spoke immediately after hearing from

21  plaintiff's counsel on Thursday. I called the general

22  counsel of the company and asked her to commission an

23  investigation which she did.

24         And since sending the letter to the Court

25  yesterday, I heard back from her with the results of the

3

Gallelli et al v. Crown Imports et al - 9/28/10

1  investigation which are as follows.  I gave the report to

2  the general counsel asking her to give the report to

3  somebody at the company with knowledge of the relevant --

4           THE COURT:  You mean the expert report.

5           MR. BORNSTEIN:  Yes.

6           THE COURT:  Okay.

7           MR. BORNSTEIN:  I gave the expert report to

8  general counsel.  I asked her to pass the expert report

9  along to somebody at the company with knowledge of the

10  relevant technical issues in order to get some sense of

11  the report and what's in it and the usefulness of the

12  report.  She did that.  She gave it a gentleman at the

13  company who is responsible for quality control and things

14  like that.

15           His reaction was to say I know some of this

16  stuff but I really don't know very much about the

17  technical substance of the report which refers to the

18  glass bottle manufacturing issues and glass bottle

19  destruction issues.  And he said I don't know enough

20  about this because we don't make glass bottles at Modelo.

21  We buy them from other people.

22           And so he gave the expert report to a contact

23  of his from one of the companies from which Modelo

24  purchases glass bottles.

25           THE COURT:  That would be Emhart (ph.)?

4

Gallelli et al v. Crown Imports et al - 9/28/10

1      MR. BORNSTEIN:  No, Emhart is the employer of

2  plaintiff's expert.

3      THE COURT:  Okay.

4      MR. BORNSTEIN:  What Emhart does is manufacture

5  machines that are used in the production of glass

6  bottles.

7      THE COURT:  Okay.

8      MR. BORNSTEIN:  And so this gentleman at Modelo

9  passed the report along said, hey could do me a favor,

10  would you please look at this. Let me have your feedback.

11  The general counsel followed up to see who it was who got

12  a copy of the report, personally spoke to people --

13      THE COURT:  Was there any limitation on the

14  distribution of the report?

15      MR. BORNSTEIN:  Absolutely not.

16      THE COURT:  Okay.

17      MR. BORNSTEIN:  It's not confidential.  The

18  protective order doesn't cover it.  There's no

19  confidential information in it.

20      THE COURT:  Okay.

21      MR. BORNSTEIN:  The general counsel learned

22  from her conversations with relevant people that there's

23  a gentleman at the glass manufacturer named Emilio

24  Sanchez (ph.) who in the course of regular communications

25  with a contact of his at Emhart -- remember Emhart makes

5

Gallelli et al v. Crown Imports et al - 9/28/10

1   the machines that used in the production of the bottles.

2   Mr. Sanchez works for the company that makes the bottles,

3   not Modelo.

4           THE COURT:  Okay.

5           MR. BORNSTEIN:  Modelo owns a minority interest

6   in the bottling manufacturer.

7           Mr. Sanchez reports of regular business

8   dealings with the gentleman at Emhart whose name is

9   Carlos Martens.

10          THE COURT:  Go ahead.

11          MR. BORNSTEIN:  He said to Mr. Martens, "Hey do

12  you know this guy Matt Hyre?"  That's the plaintiff's

13  expert.  And Mr. Martens said "No, I don't, why do you

14  ask?"  Mr. Sanchez said, "Well I saw this expert report

15  he submitted in this case against Modelo and it's really

16  bad.  There are a lot of mistakes in this report."  And

17  Mr. Martens said, "Well I don't know who he is."  End of

18  conversation.

19          The following day Mr. Martens calls back

20  Mr. Sanchez and says "Actually you know what, I found out

21  that this guy Hyre works for us part-time.  He does some

22  consulting work on a part-time basis."  Mr. Sanchez

23  responded "Okay, well he's apparently not very good

24  because his report has all of these mistakes in it."  End

25  of conversation.

6

Gallelli et al v. Crown Imports et al - 9/28/10

1         THE COURT:  That's it?

2         MR. BORNSTEIN:  End of issue.  That's it.  No

3    threats.  No discussions about we're not going to do

4    business with you.  No discussions about business at all,

5    just a question and answer, and a comment about the

6    quality of the report.  That's it.

7         THE COURT:  All right.  Mr. Danzi, do you have

8    anything more to add to that?

9         MR. DANZI:  Yes, your Honor, may it please the

10   Court.  My partner, Mr. Bob Lustberg communicated with

11   the attorney for Emhart and in connection with those

12   conversations, he has some relevant things to add to this

13   ^10:51:14 (inaudible) piece and I'LL have him address

14   that issue.

15        THE COURT:  Okay.

16        MR. DANZI:  Thank you.

17        MR. LUSTBERG:  Well first of all, your Honor,

18   the conversation that we had with Emhart's attorney was

19   to the effect that the sales staff had -- from Emhart had

20   been in contact with the purchasing people who dealt with

21   Grupo Modelo.

22        THE COURT:  Entirely consistent with what was

23   just reported.  What else?

24        MR. LUSTBERG:  Exactly.  We have -- we also --

25   the question here is whether the contact was made from

7

Gallelli et al v. Crown Imports et al - 9/28/10

1  the entity -- a Grupo Modelo entity and it was with

2  respect to the Matt Hyre report through his employer.

3          Quite frankly, our expert has told us --

4          THE COURT:  Do you have anything more to add

5  factually other than a characterization?

6          MR. LUSTBERG:  Your Honor, we do not know that

7  what he has told us is accurate.  We have asked Emhart's

8  attorney for the names of the individuals involved.  He

9  did not know the names of the individuals involved.

10          THE COURT:  All right.  End of story.  When you

11  have more information, I'll be happy to hear it.

12          MR. LUSTBERG:  Well, your Honor, we obviously

13  are going to need an opportunity to subpoena people

14  because --

15          THE COURT:  You can go ahead.  Use the --

16  whatever vehicle is available to you.  I'm not going to

17  sign anything.  Grupo Model's not a party to this action

18  at all.  I'm not even sure I have any jurisdiction to

19  take any action at all but in any event, go right ahead.

20  Go do what you think you've got to do.

21          MR. LUSTBERG:  What we are going to be doing is

22  asking the Court to issue subpoenas.

23          THE COURT:  No, I'm not issuing a so-ordered

24  subpoena against Grupo Modelo or anybody who is not a

25  party in this action.

8

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. LUSTBERG:  Well the problem we have, your

2    Honor, is that we can't speak to these people.

3          THE COURT:  Oh, well I don't know what else you

4    want me to do.  What do you mean you can't speak to them?

5          MR. LUSTBERG:  Well, your Honor, if the

6    attorney for Emhart says he's not going to allow us to

7    talk to the Emhart employees that had been contacted and

8    we know a contact took place.  I need some sort of a

9    process to tell them what --

10         THE COURT:  I don't know what process that

11   would be.

12         MR. LUSTBERG:  Well I --

13         THE COURT:  I don't have jurisdiction over

14   those parties.

15         MR. LUSTBERG:  Well, your Honor, we think this

16   Court has jurisdiction to grant a remedy in an obvious

17   situation where we have a contact.

18         THE COURT:  No, you don't have an obvious

19   situation.  You have what has been described as a fairly

20   innocent contact and you have nothing to say to me that

21   proposes a different -- I mean you have nothing, as I see

22   it.

23         MR. LUSTBERG:  We have nothing because we do

24   not have the ability to ask these people questions.  We

25   have our expert who has told us that he is not going to

9

Gallelli et al v. Crown Imports et al - 9/28/10

1   even talk to us anymore because of a situation --

2          THE COURT:  Well he's the place to start, I

3   would think because ultimately to the extent that you

4   have control over any part of this, you have control over

5   your own expert who I gather you must have paid some

6   money to.

7          MR. LUSTBERG:  We paid a lot of money.

8          THE COURT:  Okay.  So you need to start with

9   him.  I mean what does he tell you?

10         MR. LUSTBERG:  He is telling --

11         MR. DANZI:  May I speak to that, Judge?

12         THE COURT:  Sure.

13         MR. DANZI:  Because I had the conversation with

14  him.

15         THE COURT:  Uh-huh.

16         MR. DANZI:  He said that he got a -- "I got a

17  call from Matt on Wednesday, September 22."

18         THE COURT:  Matt?

19         MR. DANZI:  I'm sorry, Mr. Hyre -- Dr. Hyre.

20         THE COURT:  Okay.

21         MR. DANZI:  He was leaving the country to go to

22  Rio de Janeiro in September.  He said he got a phone call

23  from his employer, his boss and was told that the sales

24  staff was going out selling the Emhart product to a

25  Corona company, was being turned away because of Matt

10

Gallelli et al v. Crown Imports et al - 9/28/10

1   Hyre's involvement in this lawsuit.  And that his -- he's

2   a young man.  He's in his early 40s.  He's got a wife and

3   a child and that his livelihood is in jeopardy and he's

4   scared.  He doesn't know what to do.  He flew to --

5           THE COURT:  Have him sign an affidavit.

6           MR. DANZI:  But my problem is --

7           THE COURT:  No, you have no problem getting an

8   affidavit from somebody under your control.  I want a

9   sworn affidavit stating facts, not his surmise and not

10  your narration of what he said.

11          MR. DANZI:  Your Honor, may I please just make

12  the following statement?

13          THE COURT:  Go ahead.

14          MR. DANZI:  He has refused to have any further

15  conversation with me because of the pressure that's been

16  on him through his --

17          THE COURT:  I can't do anything about it.  I

18  have to have facts.  I must have from you an affidavit by

19  the person who you say was interfered with.  I can't take

20  your version of this.  Your verison of this doesn't help

21  me.

22          MR. DANZI:  I have no problem with that.

23          THE COURT:  Okay.

24          MR. DANZI:  And I'm happy to do that.

25          THE COURT:  Okay.

11

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. DANZI:  But I also would like to get some

2    input from the attorney from Emhart who communicated with

3    us to confirm that in point of fact --

4          THE COURT:  If they want to submit an

5    affidavit, get one from them as well.

6          MR. DANZI:  Do I have any remedy vis-a-vie the

7    federal rules?

8          THE COURT:  You want me to do your research for

9    you?

10          MR. DANZI:  No, your Honor.

11          THE COURT:  You tell me what it is.  I don't

12    know.

13          MR. DANZI:  Your Honor, I will do that.

14          THE COURT:  Okay.

15          MR. DANZI:  Thank you very much.

16          THE COURT:  All right.

17          MR. DANZI:  We will proceed as you direct.

18          THE COURT:  You know, do I know how you should

19    proceed?  No, I think that you're going to have to figure

20    it out and then if there's a challenge to it, I'll decide

21    whether or not it's in accordance with the law but I'm

22    not going to do your research for you and tell you how to

23    go about this.  But I'd certainly -- I think what shouts

24    out here is that there must be affidavits so that we're

25    relying on actual statements of witnesses and not

Gallelli et al v. Crown Imports et al - 9/28/10

1   someone's, you know, narration or interpretation of

2   typical problem, with taking this -- you know, this --

3   taking it from someone whose not being sworn to.

4              MR. DANZI:  If I may, and I will end this

5   conversation --

6              THE COURT:  Right.

7              MR. DANZI:  -- because it's clear that you draw

8   the line (inaudible) direction.  We will do that.

9              THE COURT:  Go ahead.

10             MR. DANZI:  We will reach out to Mr. Hyre and

11  seek to have him sign an affidavit as to what transpired.

12             THE COURT:  Right.

13             MR. DANZI:  If we are not successful in doing

14  that, I will submit a sworn statement to the Court

15  outlining what it is I attempted to do and then develop a

16  plan -- I ask the Court for the remedies based upon

17  whatever transpired (inaudible).

18             THE COURT:  I'm telling you that you could

19  certainly do that and lay out whatever you think I need

20  to take a look at.  But in the absence of someone who is

21  prepared to execute a sworn statement as to the fact that

22  pressure was put on him, you're -- it's a house of cards

23  that can't be built.

24             MR. DANZI:  We will get that affidavit.

25             THE COURT:  Okay.

13

Gallelli et al v. Crown Imports et al - 9/28/10

1            MR. DANZI:  Thank you.

2            THE COURT:  All right.  I thought as long as

3    you're here, I'm going to take the opportunity to resolve

4    a couple of other issues that have been kind of spinning

5    out there that should have been resolved a while ago. I'm

6    not sure how they came to languish so long but they did.

7            Okay.  Starting with the motion to compel the

8    depositions of the five nurses, okay?  It seems that the

9    primary objection to the taking of those depositions

10   rests on two basis; that is one, it exceeds the number

11   ten and the other is that the discovery schedule will be

12   exceeded by then.

13           One of the things I intended to do today

14   obviously is to extend the discovery schedule for a whole

15   host of other reasons, much to do with the applications

16   -- other applications made by the parties in this case

17   which makes clear that discovery in this case is not

18   over.  So to the extent that the objection is based on

19   the discovery schedule, that one is not going to fly.

20           The question of whether or not the number ten

21   should limit the deposition of these nurses, clearly the

22   deposition of these nurses to the extent that it's

23   believed that they had conversations with the parents or

24   the child, are relevant.  I'm not going to limit the

25   defendants from doing that.

14

Gallelli et al v. Crown Imports et al - 9/28/10

1          And I can't even understand why somebody would

2   not want to have those depositions taken, particularly

3   the plaintiffs because regardless of whether or not

4   they're deposed, they're still going to be witnesses at

5   trial.  So you just deny yourself the opportunity to, you

6   know, interview them before trial.  Why anybody would

7   want to be in that posture, I'm not sure.  But my -- even

8   if I decided that exceeding they number ten will not be

9   permitted, they're not going to be precluded from being

10  trial witnesses.  So it seems to me that it would turn

11  out to be a serious disadvantage to the plaintiffs, I

12  suppose by not permitting those depositions and

13  permitting them to partake in them.

14          So those depositions could go forward.  They

15  should be done expeditiously and in accordance with the

16  schedule I'm going to set as soon as I'm done with some

17  of these other motions.

18          There is the motion -- actually, it's six

19  nurses, right? Five nurses?  Six nurses.

20          MR. BORNSTEIN:  I believe there are six,

21  your Honor.  We have the attorney here who is

22  representing the nurses, as well.

23          THE COURT:  Okay.  Does anyone want to add

24  anything to what I've discussed?  I mean I suppose that

25  this is a disruption to the hospital but I would be happy

15

Gallelli et al v. Crown Imports et al - 9/28/10

1   to hear from you on that basis.

2           MR. LOCHMAN:  Your Honor, Charles Lochman

3   (ph.).  I don't know (inaudible).  I've spoken to counsel

4   and suggested that perhaps we could take the deposition

5   of one or two of the nurses first and see whether or not

6   he actually needs to depose all six.

7           THE COURT:  Uh-huh.

8           MR. LOCHMAN:  And the other question I have and

9   I would like to have your Honor resolve the issue that

10  Nurse Carolli (ph.) violated HIPAA by speaking first to

11  the plaintiff's counsel and then apparently to defense

12  counsel when she heard about how the accident occurred.

13  I'm (inaudible) HIPAA violation, your Honor, I know

14  that's been placed on the record by plaintiff's counsel

15  and we haven't had an opportunity to brief that, your

16  Honor, but it's clear that this was a -- how the accident

17  happened is not protected (inaudible).

18          THE COURT:  I tend to agree with you but who --

19  is someone saying that it is?  I mean I know that

20  plaintiff's communication suggested a HIPAA violation but

21  you yourself avail -- you spoke to the nurse about this?

22          MR. DANZI:  I spoke to the nurse.

23          THE COURT:  Okay.  And --

24          MR. DANZI:  Sorry.  The nurse --

25          THE COURT:  Did she -- what did she

16

Gallelli et al v. Crown Imports et al - 9/28/10

1    specifically reveal?

2            MR. DANZI:  What she said to me is that the

3    history of it happening, how the accident -- how the

4    injury occurred, which is medical history, that the

5    bottle was dropped on the floor and as a result of that

6    the young man got glass in his eye.

7            THE COURT:  You see, you can't blur these

8    lines.  You know, you have an accident, a car accident on

9    the -- you know, on the road.  The police -- the

10   ambulance driver who responds tells the police they just

11   had a car accident.  That's not a HIPAA violation.  To

12   report how the accident or how the injury occurs is not a

13   HIPAA violation because that would prevent an ambulance

14   respondee from telling a police officer that the accident

15   occurred as a result or the injuries occurred as a result

16   of a motor vehicle accident.  That's not the intent of

17   HIPAA.

18           MR. DANZI:  May I --

19           THE COURT:  What can't happen is the ambulance

20   driver cannot speak to the specific medical problems of

21   the individual.  So what did you want to add to that?

22           MR. DANZI:  What I wanted to add to that is

23   that based upon the duties and responsibilities of those

24   officers, communication between them in the ordinary

25   course is ordinary and custom and practice and is there

17

Gallelli et al v. Crown Imports et al - 9/28/10

1  is notice of violation in that setting for the nurse,

2  without any authorization to unilaterally pick up the

3  phone and call me and relay medical history to me --

4           THE COURT:  I don't think that matters.

5           MR. DANZI:  -- may I finish?

6           THE COURT:  I'm not -- go ahead.

7           MR. DANZI:  I'm sorry.

8           THE COURT:  I got your point.  I don't think it

9  matters.

10           MR. DANZI:  All right.

11           THE COURT:  Could the ambulance worker tell a

12  family member?  Yes?  No?

13           MR. DANZI:  For an infant; yes.  But may I just

14  (inaudible).

15           THE COURT:  No, I didn't qualify it that way.

16  My 18-year-old son has an accident.  I go there.  Can the

17  ambulance tell me -- the ambulance driver tell me my son

18  was just in a motor vehicle accident?

19           MR. DANZI:  Of course he can.

20           THE COURT:  Okay.  There we go.

21           MR. DANZI:  Of course we can.

22           THE COURT:  I just needed you to acknowledge

23  that.

24           MR. DANZI:  Yes, of course he can.

25           THE COURT:  All right.  And that' not a HIPAA

18

Gallelli et al v. Crown Imports et al - 9/28/10

1  violation.

2          MR. DANZI:  Which Judge, communication to you?

3          THE COURT:  Yes.

4          MR. DANZI:  No, that's not.

5          THE COURT:  Okay.

6          MR. DANZI:  However, communication is not so

7  clear but there was one more communication that is

8  equally important is that she got on the phone and called

9  the attorney's  for Barton and she left a message with

10 Barton with the attorneys for Barton to a similar -- and

11 that's what she told me she was going to do.  That is not

12 permitted within the definition of HIPAA, Judge.  It's

13 not.

14         THE COURT:  And you -- but essentially limited

15 to how the accident occurred.

16         MR. DANZI:  If it was --

17         THE COURT:  Or what was reported to her.

18         MR. DANZI:  I would say that's right.

19         THE COURT:  Okay.

20         MR. BORNSTEIN:  Your Honor, if I may address

21 that?

22         THE COURT:  Yes, go ahead.

23         MR. CERUSSI:  Thomas Cerussi for Barton

24 defendants.  Your Honor, the initial communication by

25 Nurse Carolli came from a call from her to my client,

19

          Gallelli et al v. Crown Imports et al - 9/28/10

1   either Barton's -- the Barton defendants or Crown Imports

2   customer service line in Chicago.  It's an 800 number

3   people leave complaints, messages.

4             And this was after she had -- this was before

5   the litigation.  This was before I was even involved.

6   This was after she obviously was treating the child, read

7   about the claims that were going to be pled in this case

8   in Long Island Newsday.

9             THE COURT:  I remember reading that.

10            MR. CERUSSI:  After her conversations with --

11            THE COURT:  Whatever she read, caused her to

12  become sufficiently upset so that she decided to

13  volunteer some information.

14            MR. CERUSSI:  Then she spoke with Mr. Danzi.  I

15  don't know how that conversation went.

16            THE COURT:  Okay.

17            MR. CERUSSI:  After that, she left a message on

18  the complaint line, nothing was saved.  Her message

19  basically was "My name is Nancy Carolli.  I have

20  information regarding this incident.  Here's my phone

21  number."  They never followed that up. I was given that

22  information once I came into the case.

23            I called her, your Honor, at the end of last

24  year, 2009.  She was reluctant to speak with me,

25  specifically because of HIPAA.  She said that she had

20

Gallelli et al v. Crown Imports et al - 9/28/10

1   information which was contrary to what she read in the

2   paper but she would not share that with me.  She said

3   that I needed to go through the proper channels of her

4   employer, of HIPAA, in order to get that information.

5           Thereafter, we had served subpoena that were

6   rejected by the hospital because they weren't so ordered.

7   I had one other conversation with her with regard to

8   scheduling the depositions and that was it.  There was

9   nothing else discussed.  She did not tell me what

10  happened other than the general information that what

11  they're claiming in the case, what she read in the

12  newspaper was not her understanding of how this accident

13  happened.  And that was based on her having conversations

14  or eliciting the conversations with the family members at

15  the hospital.  And she said that was also true of other

16  hospital personnel.

17          And that's why we subpoenaed the other nurses.

18  There are two doctors who also had entries in the record.

19  We did not subpoena them, your Honor.  They are no longer

20  with the hospital.  One is up in Westchester.  One is in

21  Philadelphia.  So that's why --

22          THE COURT:  Okay.  So number one, what -- with

23  respect to this HIPAA issue, what does it have to do with

24  anything we're doing in this courtroom?

25          MR. DANZI:  I think that there are remedied

21

Gallelli et al v. Crown Imports et al - 9/28/10

1   that are available (inaudible) state court cases and

2   (inaudible),

3          THE COURT:  That would do what, preclude her

4   from being called as a witness?

5          MR. DANZI:  Yes.

6          THE COURT:  Okay.  We're not -- I'm not doing

7   that, okay?  So what -- you know, I thought that, you

8   know, the remedies under the -- well you might know,

9   counselor, what is the enforcement mechanism for HIPAA

10  violations?

11         MR. LOCHMAN:  Well if there's a violation,

12  Judge, there's an agency that sanction the person that

13  violated a privileged communication.  And that's actually

14  been (inaudible), if you will, by plaintiff's letter to

15  the Court that my client is in violation of federal law

16  by making the phone calls that were placed on the record.

17  And as your Honor has indicated, there has been no

18  discussion of privileged health information.  It's how an

19  accident happened. What they learned about how the

20  accident happened.

21         THE COURT:  I'm fairly confident that how an

22  accident happened is not covered by HIPAA. However, I

23  haven't looked.  I must confess that the HIPAA law isn't,

24  you know, at the top of my, you know, top ten list of the

25  areas of law that I'm familiar with, so --

22

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. LOCHMAN:  Well I would respectfully request

2   that if counsel intends to raise this issue before a

3   deposition of Nurse Carolli --

4          THE COURT:  It won't matter.  I'm going to

5   issue a so-ordered subpoena for her that permits her to

6   testify.  If she committed a HIPAA violation prior to

7   giving a deposition, well that's a separate matter.  I'm

8   not going to bar her testimony forever more because of

9   what has been described here in this courtroom which is

10  sort of what I think Mr. Danzi you're asking me to do.

11         MR. DANZI:  I am.

12         THE COURT:  Okay.  Well that's not going to

13  happen.

14         MR. DANZI:  I asked.

15         THE COURT:  Okay.  You asked.  Okay.

16         MR. BORNSTEIN:  Can I just make one other

17  point?

18         THE COURT:  Yes.

19         MR. BORNSTEIN:  At the heart of my objection to

20  these (inaudible) is the failure of attribution.

21         THE COURT:  Is the what?

22         MR. BORNSTEIN:  The failure of attribution.  In

23  other words, there isn't any reasonable basis based upon

24  their (inaudible) in the chart, that they had any

25  communication.  As a matter of fact, based upon the pages

23

Gallelli et al v. Crown Imports et al - 9/28/10

1   in the chart that were attached to Mr. Cerussi's request

2   here, those entries did not -- were not by the nurses in

3   question.  Those entries were by doctors and were both

4   other people who overheard or recorded varying history.

5   There isn't a good faith basis to bringing these nurses

6   into this process to have them be asked questions because

7   in point of fact, there's no indication from their own

8   entries by -- in their own hand that they were given any

9   information by the --

10          THE COURT:  So why are you objecting to them

11  wasting their time?

12          MR. BORNSTEIN:  I guess because I'm objecting

13  to wasting my time.

14          THE COURT:  Okay.  Then don't even attend the

15  deposition if you think it's going to be that totally

16  useless.

17          MR. BORNSTEIN:  I suspect I probably won't be

18  there.

19          THE COURT:  Okay.  All right.  So I mean

20  ultimately saying to me that the other side is wasting

21  their time taking the deposition is not a basis for me

22  barring the deposition.  Do you understand that?

23          MR. BORNSTEIN:  Oh, I do but I do --

24          THE COURT:  All right.

25          MR. BORNSTEIN:  But I did have to make the

24

Gallelli et al v. Crown Imports et al - 9/28/10

1   point.  I could not sit passively and allow these

2   depositions to occur without making an attempt to prevent

3   them from happening.

4              THE COURT:  I get it.  So if they're wasting

5   their time, so be it.  Hopefully they'll work it out.  If

6   they take two depositions at first and they realize

7   they're chasing rabbits, maybe they won't require all six

8   nurses to appear, recognizing that nurse time is valuable

9   time and shouldn't be taken lightly.

10             MR. BORNSTEIN:  As (inaudible) this morning, we

11  will follow the Court's (inaudible).

12             MR. DANZI:  Your Honor, if I may, can we submit

13  a subpoena to order to be so-ordered?

14             THE COURT:  Yes, do that because you're not

15  going to get those depositions without them.  All right.

16             Now let me just go to these 30(b)(6) witnesses.

17  What's the problem with the 30(b)(6) witnesses?  I get

18  that Mr. Testas (ph.) and Mr. Contreras (ph.) have been

19  designated by the defendants as the 30(b)(6) witnesses

20  that can best respond to the areas defined by plaintiff.

21  And I also understand that the plaintiff would prefer

22  somebody else but it really is the defendant's choice.

23  If the persons they designate to respond to the 30(b)(6)

24  witness subpoena don't measure up, then you can come back

25  to me and say they didn't do what we wanted or couldn't

25

          Gallelli et al v. Crown Imports et al - 9/28/10

1   answer the questions that we posed, in which case we'll

2   have to address it again but you don't have the right at

3   this juncture to say they're unsatisfactory.

4           MR. DANZI:  Well except that we did have the

5   correspondence from counsel telling us that these people

6   were not testifying based on personal knowledge.  And so

7   you know providing us with witnesses (inaudible).

8           THE COURT:  Well that's not necessary for a

9   30(b)(6) witness.

10          MR. DANZI:  I understand, your Honor.  We are

11  trying to deal with an entity that has no employees,

12  none, no bank accounts, no nothing.  The only person who

13  has any knowledge with respect to the acts of the company

14  is the person who (inaudible).  Apparently he is the sole

15  director of the corporation.  That's who we've asked to

16  be produced.  It's pretty straightforward, your Honor.

17  Nobody else has any information.  There's no employees.

18  They don't (inaudible).  That's the (inaudible).

19          THE COURT:  But how does -- that's -- how is

20  that your 30(b)(6) witness issue?

21          MR. DANZI:  Your Honor, we think that we --

22  obviously you've stated your position that you don't

23  think that when they come forward and say we're going to

24  produce these witnesses who have no personal knowledge

25  about anything that transpired, that those witnesses be

26

Gallelli et al v. Crown Imports et al - 9/28/10

1    taken (inaudible).

2          THE COURT:  Okay.  But you could see that the

3    defendants get to choose the 30(b)(6) witness; correct?

4          MR. DANZI:  Agreed.

5          THE COURT:  And do you also agree that a

6    30(b)(6) witness doesn't have to have personal knowledge

7    of everything they testify to.

8          MR. DANZI:  Your Honor, I would think that we

9    would be entitled to the testimony of the only person in

10   that corporation (inaudible), as well as anybody else

11   they want to (inaudible).

12         THE COURT:  Well you may be able to

13   independently subpoena that person but you can't decide

14   who the defendants designate as a 30(b)(6) witness.

15   That's the rule, okay?

16         MR. DANZI:  I understand that.

17         THE COURT:  All right.  What about the motion

18   to compel 911 tapes?  Now I take it that Suffolk County

19   has preserved the tapes?

20         MR. BELL:  Good morning, your Honor.

21         THE COURT:  Yes.

22         MR. BELL:  Jeff Bell from Cravath.  Yes, they

23   have.  They have located the tapes and they are willing

24   to provide them to us.

25         THE COURT:  Okay.  And so what's the problem

Gallelli et al v. Crown Imports et al - 9/28/10

1  with getting the tapes other than the discovery schedule?

2          MR. BELL:  I understand that there are no

3  problems other than the objections raised by plaintiffs

4  and the police department's needed to have a so-ordered

5  subpoena to comply with their procedural orders.

6          THE COURT:  All right.  Submit the so-ordered

7  subpoena.

8          MR. BELL:  Thank you, your Honor.

9          THE COURT:  Okay.  Now we have the motion to

10 compel documents from Extrade or Extrade.  Is that how

11 you pronounce it?

12         MR. BORNSTEIN:  Extrade, your Honor.

13         THE COURT:  Extrade.

14         MR. BORNSTEIN:  I'm sure it's actually

15 something else in Spanish but we always call it Extrade.

16         THE COURT:  Okay.  All right.  So let's go over

17 those issues.  Let's see, it's page -- it's the

18 submission of August 16; right?  Is that this one?  All

19 right.  What about the advertising materials?

20         MR. BORNSTEIN:  Your Honor, Gary Bornstein

21 again.

22         THE COURT:  Uh-huh.

23         MR. BORNSTEIN:  The advertising materials were

24 requested of Extrade.  They were also requested of Mr.

25 Cerussi and Brandman's clients, Crown and Barton, who

28

Gallelli et al v. Crown Imports et al - 9/28/10

1    produced them.  Crown is the one responsible for doing

2    the advertising.  Crown was asked to turn over the

3    information.  Crown turned it over.

4         My client is not responsible for doing the

5    advertising and plaintiffs have the documents they asked

6    for.  So I'm not sure what the problem is.

7         THE COURT:  Is there anything more that Extrade

8    has other than what Crown has produced?

9         MR. BORNSTEIN:  No, your Honor.

10        THE COURT:  Any problem here?

11        MR. DANZI:  Well no, that's the first time we

12   heard that (inaudible) nothing more.  So our motion was

13   (inaudible) the case will proceed if, in fact, we

14   received everything from the other side and that's

15   basically what this was all about.

16        THE COURT:  All right.  And then just in

17   writing respond that way.

18        MR. BORNSTEIN:  I have and I'll do it again,

19   your Honor.

20        THE COURT:  Okay.  Incident reports?

21        MR. BORNSTEIN:  The incident reports, your

22   Honor, Extrade doesn't have incident reports.

23   Nevertheless we went and dug up incident reports from

24   affiliate companies.  The incident reports that we have

25   are all in the nature of communications to counsel,

29

Gallelli et al v. Crown Imports et al - 9/28/10

1   insurance company counsel and they are therefore

2   privileged.

3           THE COURT:  Is that laid out in the privilege

4   log?

5           MR. BORNSTEIN:  It is.  We provided the log.

6   Plaintiffs asked us for the identity of the individuals

7   on the log and the affiliations.  We provided them, as

8   well.

9           THE COURT:  Okay.

10          MR. BORNSTEIN:  So again I'm not sure what the

11  issue is.

12          THE COURT:  Well the issue is that they claim

13  and I don't want to speak for the plaintiffs but it

14  appears that whatever you submitted didn't really clearly

15  identify the relationship of the entities on the log; is

16  that so?

17          MR. BORNSTEIN:  Yes, your Honor.  The request

18  -- excuse me the letter that was provided to plaintiff's

19  counsel and which plaintiff's counsel cites in which we

20  supposedly refused to provide the information as to the

21  individuals, and said they were self-evident is Exhibit H

22  to our submission of August 16.

23          It's -- we do, in fact, say that we believe --

24  this is Mr. Bell next to me that sends the email --

25          THE COURT:  Wait, let me get to Exhibit H.

30

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. BORNSTEIN:  Thank you.

2          THE COURT:  Exhibit H of your submission of --

3          MR. BORNSTEIN:  Of August 16, your Honor.

4          THE COURT:  August 16.

5          MR. BORNSTEIN:  It's an email dated July 12

6   from Mr. Bell.  I have a copy I can provide the Court if

7   you need it.

8          THE COURT:  I have your submission of August 16

9   but I don't see it tabbed with an Exhibit H.  Maybe

10  it's --

11         MR. BORNSTEIN:  It's buried near the back,

12  your Honor.  It's the second to last exhibit.  It's a

13  July 12 email to Mr. Bell.

14         THE COURT:  No, I don't think I -- at least I

15  haven't found it.  Well this is July -- this is August 16

16  but I'm not finding the document.  If you have another

17  coy, why don't you just hand it up.

18         MR. BORNSTEIN:  Absolutely, your Honor.  I

19  apologize for the --

20         THE COURT:  Is see there are several emails but

21  I'm not sure I'm finding the right one.  What did you --

22  which date was the email?

23         MR. BORNSTEIN:  July 12, your Honor.

24         THE COURT:  July 9.

25         MR. BORNSTEIN:  From Jeffersn Bell.

31

Gallelli et al v. Crown Imports et al - 9/28/10

1        THE COURT:  All right.  It's probably in here

2   somewhere but it's not tabbed, so it's not helpful.

3   Okay.  All right.  Go ahead.  Now describe this.

4        MR. BORNSTEIN:  In the -- this was an email

5   that responded to a number of issues the plaintiffs

6   raised.  The relevant one here is the paragraph that

7   begins with --

8        THE COURT:  Bob is whom?

9        MR. BORNSTEIN:  Bob is Mr. Lustberg.

10        THE COURT:  Okay.

11        MR. BORNSTEIN:  The relevant paragraph here is

12   the one that begins with the word second.

13        THE COURT:  Uh-huh.

14        MR. BORNSTEIN:  Mr. Bell reports that some of

15   the entries on the log do not have addressee information

16   because the documents don't have addresses, they're

17   memos.  More importantly, with respect to the

18   relationships with parties, Mr. Bell does say that this

19   should be self-evidence.  He then goes on, however, to

20   give the relevant information.  He identifies each of the

21   individuals with whom they're affiliated, and how the

22   various entities are related to one another.

23        THE COURT:  All right.  Well, Mr. Lustberg, why

24   don't you show me what you say is an example of what's

25   unclear.

32

Gallelli et al v. Crown Imports et al - 9/28/10

1     MR. LUSTBERG:  Well first of all, your Honor,

2 you know, we went through this process of the initial

3 with Grupo Modelo.  And Grupo Modelo we were told is a

4 solely separate company and therefore, they're not a

5 party and Judge Spatt obviously ruled that they're out of

6 the --

7     THE COURT:  I thought it was Judge Wexler.

8     MR. LUSTBERG:  Excuse me, Judge Wexler.  And so

9 here we are, we now have another defendant in the case

10 and this is a separate corporation.  And I don't see that

11 the communication between one corporation to another

12 corporation is necessarily privileged.  It's not

13 privileged.  This is not a expert communication that was

14 made by (inaudible).  It was a communication of a

15 different corporation.  I don't see that it's privileged.

16 There's loss of privilege.  It's not the defendant.  It's

17 not the (inaudible) --

18     THE COURT:  Oh, so you know who the -- so it's

19 misleading to say you don't understand the relationship -

20 - you do know the relationship.

21     MR. LUSTBERG:  Oh, we know that they're an

22 affiliated company.  They've got dozens of companies.

23     THE COURT:  And you know that the party to whom

24 the communication was made or from whom the communication

25 was were attorneys?

33

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. LUSTBERG:  No.

2

3          THE COURT:  You don't know that?

4          MR. LUSTBERG:  I don't necessarily know that

5   based on (inaudible).

6          THE COURT:  Well give me an example of what you

7   say is unclear.  I -- just as I was providing an example

8   by the defendants, point to something that helps me

9   figure out what it is you're complaining about.

10         MR. LUSTBERG:  To be honest, your Honor, I was

11  not prepared to argue this motion today and I did not

12  bring those papers with me.  So it seemed like

13  (inaudible).

14         THE COURT:  Well I have copies.  Do you know

15  where you need to look?

16         MR. LUSTBERG:  No, I would have to take a look

17  at what is the basis -- and I would just look at

18  Jefferson Bell's letter.  I mean the fact of the matter

19  is that I don't see how they make an argument that

20  there's any privilege between an attorney for one of the

21  Grupo Modelo companies and Extrade to which was a

22  defendant in this case.  I don't see how is there -- they

23  are separate entities.  That's what we've been told.

24         THE COURT:  But if you could just point to a

25  specific example, maybe it's obvious from the example

34

Gallelli et al v. Crown Imports et al - 9/28/10

1    what the answer might be.

2           MR. LUSTBERG:  Well let me pull up the

3    document, Judge.

4           THE COURT:  Okay.  Go ahead.  I have time.  I

5    allotted time for this.

6           MR. BORNSTEIN:  And your Honor if it would be

7    helpful, I could hand the Court a copy of the relevant

8    privilege log.

9           THE COURT:  Okay.  I would be happy to see

10   whatever you want.  Now let's take a ten minute break,

11   give Mr. Lustberg enough time to find what it is he says

12   supports his argument and I'll take a copy of that,

13   provide one to Mr. Lustberg.

14          (The Court recessed.)

15          THE COURT:  All right.  Mr. Lustberg, did you

16   have enough time?

17          MR. LUSTBERG:  Yes, your Honor.

18          THE COURT:  Okay.

19          MR. LUSTBERG:  Your Honor, the issue is that

20   I'm going over this privilege log and the actions that

21   Extrade apparently has in their possession all of these

22   documents and Extrade II is not a defendant in any of

23   these cases.  They have those documents in their

24   possession.  There is no attorney/client privilege with

25   respect to those documents.  They were not a party to any

35

Gallelli et al v. Crown Imports et al - 9/28/10

1   of these actions.

2            THE COURT:  Well I don't think attorney/client

3   privilege depends on whether or not they're a party.

4   That seems to be your argument.

5            MR. LUSTBERG:  No, if Extrade -- yes, if

6   Extrade II is in possession of my files, of my attorney's

7   letters through somebody else, that does not give me --

8            THE COURT:  Why don't you just give me the --

9            MR. LUSTBERG:  -- that's not privileged at all.

10           THE COURT:  Don't give me theoretical.

11           MR. LUSTBERG:  Okay.

12           THE COURT:  What is the specific example you're

13  trying to --

14           MR. LUSTBERG:  Sure.

15           THE COURT:  That's why I asked you to be

16  specific.

17           MR. LUSTBERG:  Yes.  No, no.  For example --

18  for example, Mark Glazer (ph.) is the author of number

19  one, memorandum number one.

20           THE COURT:  Okay.  Do I have that?  Let me see.

21  Where was that document. What are you looking at?  I

22  didn't --

23           MR. LUSTBERG:  The privilege log.

24           THE COURT:  I don't have a copy.

25           THE CLERK:  I thought I put it on.  I'll check.

36

Gallelli et al v. Crown Imports et al - 9/28/10

1      THE COURT:  Okay.  Is this it?

2      MR. LUSTBERG:  I have another copy.

3      THE COURT:  Okay.  I have it.  I have it.  Go

4  ahead.  All right.  So item one, go ahead.

5      MR. LUSTBERG:  Item one, Mark Glazer is the

6  author of this document.  He neither works for nor has

7  any relationship with Extrade II.  The case that he's

8  reporting on is not an Extrade II case.  So I don't

9  understand how if Extrade II has this document in its

10  possession, it becomes an attorney/client privilege with

11  respect to Extrade II.

12      THE COURT:  Okay.  But did you ask that

13  question of counsel?

14      MR. LUSTBERG:  We know it.  I mean, we know it.

15  We know this case.  We know most of these cases --

16      THE COURT:  Okay.  But did you say to counsel

17  -- you see you're required to meet and confer about an

18  issue before you come to me.  Did you go to counsel and

19  say listen, how does this get on the privilege log if

20  Extrade is not a party or just the precise argument you

21  made?

22      MR. LUSTBERG:  Well I don't know exactly what

23  the communication was to counsel, your Honor.

24      THE COURT:  Well I thought --

25      MR. LUSTBERG:  I mean a number of -- I'm going

37

Gallelli et al v. Crown Imports et al - 9/28/10

1   to say this in all seriousness, I mean, we had a number

2   of emails going back and forth to Mr. Bell and myself

3   concerning this and, you know, obviously they've not be

4   presented to the Court.

5           THE COURT:  Okay.  So --

6           MR. LUSTBERG:  And I want to go through that --

7   between -- and I've looked at these and every single one

8   of these instances has identified Extrade II is not a

9   party.  The attorneys referred to is not the attorney

10   from Extrade II.  And so if it is Extrade II's

11   possession, how does it become privileged?  It doesn't.

12   The only thing that could possibly be privileged is if it

13   was a communication from Extrade to its counsel to or

14   from them concerning the lawsuit providing or giving them

15   advice.  And that does not exist here.

16           THE COURT:  So you define attorney/client

17   privilege as being limited to situations where somebody's

18   a party to a lawsuit?

19           MR. LUSTBERG:  They have to be the attorney --

20           THE COURT:  I gather that Glazer is an

21   attorney.

22           MR. LUSTBERG:  Mr. Glazer is not Extrade II's

23   attorney.

24           THE COURT:  And you confirmed that in

25   conversation with counsel?

38

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. LUSTBERG:  Well counsel's here.  I mean he

2     represents --

3          THE COURT:  No, no, no.  You see this is what

4     you're required to do.  You are required when you have a

5     question like that or you don't understand a response

6     you've been given, to first call your adversary and find

7     out are you correct about your assumption that there is

8     no connection between the two.

9          MR. LUSTBERG:  Well --

10          THE COURT:  And give them -- and if they give

11     you a bogus answer and one you're not satisfied with,

12     then you come to me.

13          MR. LUSTBERG:  Right.

14          THE COURT:  But you don't come to me and bypass

15     that inquiry.

16          MR. LUSTBERG:  I am -- you know what we did was

17     in good faith was we've looked up these cases.  We know

18     these firms.

19          THE COURT:  Okay.

20          MR. LUSTBERG:  And so we've looked up these

21     cases.  We know what these cases are generally about, who

22     the parties were.  Extrade II is not a party to

23     (inaudible).

24          THE COURT:  I hope I don't get a very simple

25     explanation from the defendants because then I'm going to

39

Gallelli et al v. Crown Imports et al - 9/28/10

1   be a little annoyed because then it would just mean I'm

2   here going over this and --

3           MR. LUSTBERG:  Your Honor?

4           THE COURT:  -- it was only because nobody

5   bothered to ask.

6           MR. LUSTBERG:  I appreciate that, your Honor.

7           THE COURT:  Okay.

8           MR. LUSTBERG:  I made that -- just we made the

9   assumption because Extrade II in point of fact was not in

10  existence when some of these lawsuits were (inaudible).

11          THE COURT:  All right.  You know for the future

12  how I want you to proceed.

13          MR. LUSTBERG:  Yes.

14          THE COURT:  Okay.  All right.  But there may

15  not be an answer.  So let me hear from the defendant.

16  Who is going to address that?

17          MR. BORNSTEIN:  I'll address that, your Honor.

18  Gary Bornstein.

19          Mr. Glazer, let's take this specific example as

20  reflected in the log, is an attorney from the firm of

21  Glazer & Binder as reflected in the exhibit that I

22  directed your Honor to earlier, Exhibit H in our letter.

23  It states that Mr. Glazer is an attorney who works with

24  various affiliate companies of Grupo Modelo.  Extrade II

25  is, as Mr. Lustberg just acknowledge, one of the

40

Gallelli et al v. Crown Imports et al - 9/28/10

1   affiliated companies associated with Grupo Modelo.  The

2   privilege here is pursuant to the common interest

3   exception which applies to affiliated companies, pursuant

4   to common enterprise.  We've cited some of the cases to

5   your Honor in my August 16 submission, as the basis for

6   the assertion of privilege.

7            THE COURT:  So essentially Mark Glazer works

8   for or does work for Grupo Modelo and Extrade is an

9   affiliate of Grupo Modelo's.

10           MR. BORNSTEIN:  Correct.

11           THE COURT:  Okay.  Now -- okay.  I have a lot

12  of papers and I tend to lose papers.  So where is the

13  April 20 memorandum, just so I -- that's this one.  All

14  right.  Now I have an email dated July 12.  What I want

15  to see if you have it handy is the April 20 memorandum.

16           MR. BORNSTEIN:  The April 20 memorandum, your

17  Honor, is the privileged document.

18           THE COURT:  I understand that.  Do you have

19  that?

20           MR. BORNSTEIN:  I did not bring a copy of the

21  document with me.

22           THE COURT:  So what I want to do then is have

23  you submit for my review those documents you withheld on

24  that -- on the basis of common interest privilege, okay?

25  I want to examine them.  I presume that to the extent

Case 2:08-cv-03372-LDW-ARL   Document 119   Filed 11/18/10   Page 41 of 57 PageID #: 2089

Gallelli et al v. Crown Imports et al - 9/28/10

1  that at least Mark Glazer -- what about Daniel Martinez,

2  the same argument?

3          MR. BORNSTEIN:  Same.

4          THE COURT:  Okay.  Wherever you assert the

5  common interest privilege, submit those documents.

6          MR. BORNSTEIN:  I will, your Honor.

7          THE COURT:  Okay.

8          MR. LUSTBERG:  Can I make my -- go a little

9  further with this because I understand what counsel is

10  saying with respect to the common interest documents.

11          THE COURT:  Uh-huh.

12          MR. LUSTBERG:  And he's taking the position

13  that these are all affiliated companies and I understand

14  that they in fact are affiliated companies, but, you

15  know, when we asked for document demands, we do not get

16  documents from all affiliated companies.  It seems to be

17  very much a one-way street as we understand it that

18  counsel's going to represent to the Court that they were

19  -- these documents were not in Extrade II's hand.

20          So to the extent that we're able to get

21  affiliated companies, we get them but -- so I just want

22  to understand this.  The Court's understanding is that we

23  have an affiliated company and --

24          THE COURT:  I have no understanding.

25          MR. LUSTBERG:  Okay.

42

Gallelli et al v. Crown Imports et al - 9/28/10

1    THE COURT:  Don't ask for my understanding.
2  Ask for their understanding.  You're asking me to filter
3  their understanding?
4    MR. LUSTBERG:  Well --
5    THE COURT:  I think that's what you're asking
6  me to to do.
7    MR. LUSTBERG:  No -- okay.  No, I guess what I
8  am going to come back is as I'm going to be making a
9  further inquiry by letter to Mr. Bornstein as to whether
10  his responses to our discovery demands are from the
11  affiliated companies, as well, because if he's asserting
12  privilege on behalf of the affiliated company, then he
13  should be producing documents from the affiliated
14  company, as well.
15    THE COURT:  Do you want to address that?
16    MR. BORNSTEIN:  Can I just forestall the letter
17  and save everyone some time?  We've already said in the
18  submission to the Court of August 16, we've produced
19  documents from affiliate companies on behalf of
20  (inaudible).
21    THE COURT:  All right.  There's your answer.
22  You've been getting the affiliate documents and you don't
23  even know it.
24    MR. LUSTBERG:  No, I think I've been getting
25  selective affiliate documents (inaudible).

Gallelli et al v. Crown Imports et al - 9/28/10

1          THE COURT:  All right.  Okay.  I need to see

2    the documents before I can decide that issue.  I think

3    that's it.

4          MR. DANZI:  Your Honor?

5          THE COURT:  Yes.

6          MR. DANZI:  With the Court's indulgence and I

7    do understand past position, but given the gravity of

8    this issue which brings us here, would you indulge me

9    about two minutes to (inaudible).

10         THE COURT:  Go ahead, make your record.

11         MR. DANZI:  Thank you, ma'am.  I am now in

12   front of you after almost three years of litigation and

13   tens of thousands of dollars of expenses and the report

14   generated by a PHD from MIT who is a specialist in bottle

15   manufacturing, over twenty pages including all kinds of

16   computational analysis and a million data points, I'm

17   past the point of getting an additional expert as the

18   schedule currently exists and I know that can be easily

19   erected, but the practical respect to this, the practical

20   respect to this is I have an expert, a young guy I've

21   been working with intimately for three years.  He comes

22   to me panicked.  He's gone.

23         THE COURT:  Where is he?

24         MR. DANZI:  He is in Minnesota teaching at

25   Northwest --

44

Gallelli et al v. Crown Imports et al - 9/28/10

1          THE COURT:  You give me a subpoena and I'll so

2   order it for him.

3          MR. DANZI:  Thank you, Judge.

4          THE COURT:  I'll be happy to do that.

5          MR. DANZI:  That would be great.

6          THE COURT:  What else do you want, Mr.

7   Lustberg?

8          MR. LUSTBERG:  Well the other thing I wanted

9   was one of the issues that we had with respect to Extrade

10  II was the location of depositions.

11         THE COURT:  Oh, right.  On the 30(b)(6)

12  witnesses, I'm thinking that the telephone, videotape

13  arrangement is more than adequate.  I mean if they --

14  unless they are witnesses that you know come into the

15  states on any kind of a regular basis or are going to be

16  in the states and I expect the defendants are going to be

17  up front about that, you do this by telephone.

18             If they were, you know, like the eyewitnesses

19  to the event then I would probably take a different tact

20  but because nuance and, you know, eye contact is

21  important when it's the key witness.  But I think when

22  it's policy and procedure witnesses, you can do that by

23  telephone and videotape.  So make those arrangements.

24         MR. LUSTBERG:  Okay.

25         THE COURT:  Okay.

45

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. DANZI:  One quick question?

2          THE COURT:  Yes.

3          MR. DANZI:  In terms of the subpoena, Judge,

4    where do you want it returnable?

5          THE COURT:  To here, I suppose.

6          MR. DANZI:  Okay.  Because he is in Minnesota.

7          THE COURT:  And I get it.  We'll do it.  We can

8    -- you could do it -- have it returnable but we could

9    take a telephone conference first so I can talk to this

10   gentleman and tell him he's going to be expected to

11   appear at the trial when it's time for the trial.  How do

12   you want me to proceed?

13         MR. DANZI:  What I would like --

14         THE COURT:  You look disappointed by that

15   offer.

16         MR. DANZI:  Well because I can't have this

17   process remain unresolved.

18         THE COURT:  Oh, it's not going to be

19   unresolved.  It's going to be made very clear to this

20   gentleman that he's going to be subpoenaed to appear at

21   this trial.

22         MR. DANZI:  I would be much more interested in

23   having him be subpoenaed for the purposes of getting

24   information from him about the contacts that were talked

25   about from him to me.

46

Gallelli et al v. Crown Imports et al - 9/28/10

1          THE COURT:  Okay.

2          MR. DANZI:  Because I can't have as a practical

3   matter a witness -- an expert witness I'm at odds with on

4   that witness stand.  That won't work.  But I really

5   believe that there -- this is not --

6          THE COURT:  All right.  I'm going to set a

7   hearing date.

8          MR. DANZI:  Perfect.

9          THE COURT:  Okay.

10          MR. DANZI:  Thank you.

11          THE COURT:  I'd be happy to accommodate you

12   that way.

13          MR. DANZI:  Thank you very much.

14          THE COURT:  We'll set a date for a hearing.  Go

15   ahead.

16          MR. BORNSTEIN:  Two questions, your Honor.

17          THE COURT:  Uh-huh.

18          MR. BORNSTEIN:  First I wanted to understand

19   the nature of the hearing that Mr. Danzi is requesting.

20          THE COURT:  To conduct -- to give counsel an

21   opportunity to present testimony with respect to what he

22   says the interference with his witness.

23          MR. DANZI:  Thank you, Judge.

24          MR. BORNSTEIN:  And --

25          THE COURT:  Okay?  And to the extent that he's

Gallelli et al v. Crown Imports et al - 9/28/10

1    having difficulty producing the key witness that the

2    Court needs to hear from who would provide testimony with

3    regard to that matter, I'm going to give him a so ordered

4    subpoena.

5              MR. BORNSTEIN:  Okay.

6              THE COURT:  Okay.

7              MR. BORNSTEIN:  With respect who the key

8    witnesses are on this issue, with respect, I don't think

9    it's the expert.  The expert is relaying something which

10   occurred from other people.

11             THE COURT:  Well it may be you're right.  I

12   don't know but to the extent that I've heard about what

13   occurred, it may be that the expert only has hearsay to

14   offer and not direct knowledge in which case nothing's

15   going to happen.

16             MR. BORNSTEIN:  One of --

17             THE COURT:  Nonetheless, I think he's an

18   important person to hear from one.

19             MR. BORNSTEIN:  One other procedural point, it

20   sounds to me and I hadn't heard this before like there's

21   some prospect that Mr. Danzi may wish not to call the

22   expert at trial.  I have a responsive expert report

23   that's due on Monday.

24             THE COURT:  Uh-huh.

25             MR. BORNSTEIN:  I'm concerned about the

48

Gallelli et al v. Crown Imports et al - 9/28/10

1    prospect of my producing a report in response to the
2    report of a witness who then isn't going to testify.  So
3    if there's some issue about whehter or not Mr. Hyre is
4    going to take the stand, I would request --
5              THE COURT:  Well let me ask you, Mr. Danzi, you
6    know, what's going to happen?  Are you going to call him
7    or you're not going to call him?
8              MR. DANZI:  Well, Judge, how would I know?  My
9    point is just --
10             THE COURT:  Well, no, no, no.  That's -- we're
11   not asking -- I'm not asking you whether he's going to
12   come.  Are you going to call him?
13             MR. DANZI:  At this point, yes.
14             THE COURT:  Okay.
15             MR. DANZI:  And --
16             THE COURT:  That's your intent?
17             MR. DANZI:  That's my prayer.
18             THE COURT:  Okay.
19             MR. BORNSTEIN:  And we have a deposition which
20   will need to happen too, I assume he'll be made available
21   for that.
22             THE COURT:  Is there no reason why you can't do
23   the deposition the day -- as soon as that hearing's over.
24             MR. BORNSTEIN:  That's fine.
25             THE COURT:  Start it that day.

49

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. BORNSTEIN:  Okay.

2          THE COURT:  All right.  So let's agree on what

3 date.

4          MR. DANZI:  There's one other issue and that is

5 we know that Mr. Hyre has information that was related to

6 him by the sales staff coming out of Emhart, many of

7 those people are located in Connecticut.  After he gives

8 us the information he has, there may be more sources of

9 information that we may wish to pursue and that may --

10 and with the Court's permission, of course, and I'm not

11 suggesting anything other than that, but keep open this

12 possibility of being able to issue subpoenas with regard

13 to the --

14          THE COURT:  I should keep it open?

15          MR. DANZI:  No, ma'am, I would like to keep it

16 open.

17          THE COURT:  Okay.

18          MR. DANZI:  No, no.  I'm not presupposing

19 anything like that.

20          THE COURT:  All right.

21          MR. DANZI:  I'm sorry.  I misspoke.  I would

22 like the Court to understand that we wish to keep open

23 that possibility dependent upon the testimony of Mr. Hyre

24 because as I understand it now --

25          THE COURT:  Look, here's -- I'm going to gibe

50

Gallelli et al v. Crown Imports et al - 9/28/10

1   you this fair warning.

2           MR. DANZI:  Yes, Judge.

3           THE COURT:  Don't start with your weakest

4   witness because if you start with a weak witness who is

5   not going to demonstrate that any interference occurred,

6   then I'm not going further.  I'm not going to give you

7   five subpoenas to chase the rabbit.

8           MR. DANZI:  Yes.

9           THE COURT:  I am going to let you start with a

10  strong witness who is going to demonstrate to me that in

11  fact there is something to this and not just have

12  somebody show up and say I was told by (B) that (A) said

13  this.  If that's what you got, that would not be a good

14  way to start because it's not going to lead anything

15  beyond that witness.

16          MR. DANZI:  Judge, then may that witness please

17  be the attorney for Emhart, Mr. Comelli (ph.), who we

18  spoke to, who wrote -- who confirmed to us after

19  consulting with his client, the representations made to

20  me by Mr. Hyre?

21          THE COURT:  You choose the witness.

22          MR. DANZI:  Fine.  That's what I wanted to

23  know.

24          THE COURT:  I am not going to choose the

25  witness for you.  You choose what you believe is the best

51

Gallelli et al v. Crown Imports et al - 9/28/10

1   witness who is going to demonstrate firsthand not through

2   hearsay, I spoke to so and so, but who is going to

3   demonstrate in a very, you know, convincing manner that

4   interference has occurred.

5           MR. DANZI:  Yes, Judge.

6           THE COURT:  That's as much as I can guide you.

7           MR. DANZI:  Thank you, your Honor.

8           MR. BORNSTEIN:  And, your Honor?

9           THE COURT:  But you need to tell counsel for

10  the defense who I am sure about to raise this, who is

11  coming and make arrangements for Hyre to be available for

12  a deposition in any event.

13          MR. DANZI:  Yes.

14          THE COURT:  So if you are -- if we feel there's

15  going to be a deposition problem for Hyre, I'll so order

16  the deposition subpoena.  Okay?  It's amazing what my pen

17  can do.  I can sign lots of subpoenas.

18          MR. BORNSTEIN:  Your Honor?

19          MR. DANZI:  Thank you, Judge.

20          THE COURT:  Happy to do it.  All right.  What

21  else do we have?

22          MR. BORNSTEIN:  Well, your Honor, if we're

23  going to have a hearing on this issue --

24          THE COURT:  Yes.

25          MR. BORNSTEIN:  -- I would request that I have

52

Gallelli et al v. Crown Imports et al - 9/28/10

1  some advance knowledge of what is the testimony will be,

2  so that I have the opportunity to (inaudible).

3          THE COURT:  Well we've got to identify the

4  witness.  That's why I said you've got to give counsel

5  notice of who the witness is and give a proffer to

6  counsel.  That's fine.

7          MR. DANZI:  Yes, your Honor.

8          THE COURT:   That's more than fair.

9          MR. DANZI:  We'll do that.

10          THE COURT:  All right.  Let me give you a date.

11          MR. BORNSTEIN:  When we say a proffer, are we

12  talking about in the form of an affidavit or just a

13  statement by counsel of what it is this person will

14  testify to?

15          THE COURT:  A proffer can be an oral statement,

16  just an oral statement is fine.

17          MR. DANZI:  Thank you, Judge.

18          THE COURT:  October 12 at 10:30.

19          MR. DANZI:  Yes, your Honor.

20          MR. BORNSTEIN:  Your Honor?

21          THE COURT:  Yes.

22          MR. BORNSTEIN:  I apologize but I have a trial

23  currently scheduled --

24          THE COURT:  Oh, that's okay.  I'm sorry.  Yes,

25  I should have asked if it was okay before I ordered it.

53

Gallelli et al v. Crown Imports et al - 9/28/10

1 Go ahead.

2         MR. BORNSTEIN:  I have a trial currently

3 scheduled to begin on October 4.

4         THE COURT:  Okay.

5         MR. BORNSTEIN:  Which is --

6         THE COURT:  How long before you're available?

7         MR. BORNSTEIN:  I would request that we do it

8 at the end of October if it's possible with the Court's

9 schedule.

10         THE COURT:  All right.

11         MR. DANZI:  Your Honor, I have a trial October

12 21, jury selection -- so if you want to do it before

13 that, I would have to be (inaudible).

14         THE COURT:  Well I don't think you're available

15 before that.

16         MR. BORNSTEIN:  I can do it after your trial.

17         THE COURT:  Okay.  When is that? Now we're into

18 November.

19         MR. DANZI:  Yes, your Honor.

20         THE COURT:  Okay.

21         MR. DANZI:  Judge, if I'm not available, Mr.

22 Lustberg will take that trial. So let's not delay it to

23 the middle of November.  We would be happy to take that

24 October date.

25         THE COURT:  Okay.

Gallelli et al v. Crown Imports et al - 9/28/10

1          MR. DANZI:  State court's rather unpredictable.

2     So, maybe my case won't go (inaudible).

3          THE COURT:  All right.  October 26?

4          MR. BORNSTEIN:  If I may look at my calendar,

5     your Honor.

6          THE COURT:  Sure.  Go ahead.

7          MR. BORNSTEIN:  Thank you.

8          MR. DANZI:  Judge?

9          THE COURT:  Yes.

10         MR. DANZI:  I'm sorry.  Is there a record made

11    of this proceeding?

12         THE COURT:  Yes.

13         MR. DANZI:  Who do I (inaudible).

14         THE COURT:  Mr. Imrie.

15         MR. DANZI:  Thank you very much.

16         MR. BORNSTEIN:  Your Honor, I have a hearing

17    scheduled in New York State Court for the morning of the

18    26th but if that's the date that works best for the

19    Court, I'll have somebody else cover it.

20         THE COURT:  Well let's see.  We could do the

21    29th also.

22         MR. BORNSTEIN:  The 29th would certainly be

23    preferable for me.

24         THE COURT:  All right.  The 29th at 10:30.

25         MR. DANZI:  Consider it done, Judge.

55

Gallelli et al v. Crown Imports et al - 9/28/10

1                THE COURT:  Okay.  Now --

2                MR. DANZI:  Judge, you said 9:30?

3                THE COURT:  10:30.  All right.  So what else do

4    we have to resolve?

5                MR. DANZI:  That's it as far as I can see,

6    Judge, (inaudible).

7                THE COURT:  Okay.  Are we done?

8                MR. BORNSTEIN:  I have nothing else, your

9    Honor.

10               THE COURT:  Okay.  Now there's some other items

11   on that motion to compel but if you tell me we're done,

12   we're done.  We're done?

13               MR. BORNSTEIN:  The only other thing I have on

14   my agenda, your Honor, is the Court said at the beginning

15   of the hearing there would be an adjustment to the

16   schedule.

17               THE COURT:  Yes.  Oh, right.  I'm going to give

18   you six more months for discovery.  So I'm going to send

19   you a proposed schedule.  You tell me if it works.  If

20   you want to make a slight adjustment to it, then fine.

21   But you don't have to come in to do that.  Just jointly

22   agree to how you want to adjust it, if it's -- if an

23   adjustment is needed.  But don't adjust the six months.

24   That's going to be locked in stone.  You may need a

25   little more time for summary motion practice or the date

56

Gallelli et al v. Crown Imports et al - 9/28/10

1    for a final conference, you might want to alter but six

2    months is it.  Okay?

3                        (No response.)

4              THE COURT:  All right, folks.  Thank you.

5              MR. DANZI:  Thank you, your Honor.

6              MR. BORNSTEIN:  Thank you very much.

7              (Matter concluded)

8                            -o0o-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

57

CERTIFICATION


I, Linda Ferrara, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


Dated:  November 15, 2010

_Linda Ferrara_

Signature of Approved Transcriber